**UNITED STATES of America, Appellee,**

v.

**Gordon R. THOMPSON, Appellant.**

**No. 141, Docket 29893.**

United States Court of Appeals Second Circuit.

Argued Nov. 5, 1965.

Decided Dec. 6, 1965.

**218**

Maxwell Heiman, Hartford, Conn., for appellant.

David Margolis, Asst. U. S. Atty., Hartford, Conn. (Jon O. Newman, U. S. Atty., Hartford, Conn., on the brief), for appellee.

Before KAUFMAN and HAYS, Circuit Judges, and TIMBERS, District Judge.*

TIMBERS, District Judge.

Appellant was convicted, after a jury trial, in the United States District Court for the District of Connecticut, T. Emmet Clarie, District Judge, upon one count of entering a bank with intent to commit a felony affecting the bank, in violation of 18 U.S.C. § 2113(a) ¶ 2. On this appeal he claims that certain evidence taken from his hotel room three days after the bank entry was erroneously admitted at the trial because obtained as a result of an illegal search and seizure; that evidence of his fingerprints was erroneously admitted at the trial because obtained as tainted fruit of an unlawful arrest and detention; and that the indictment failed to charge an offense against the United States in that it did not charge the essential elements of a federal felony. We hold that Judge Clarie properly admitted the evidence of which appellant complains and that he correctly rejected appellant's claim as to the insufficiency of the indictment which was first raised on a motion in arrest of judgment. We affirm the conviction.

ILLEGAL SEARCH AND SEIZURE

On the night of September 11, 1964, the First National Bank of Windsor Locks, North Thompsonville Branch, was forcibly entered and a sum of money in excess of $100 was taken. That same night a fishing pole and tackle box were taken from a garage adjoining the bank. Appellant was seen with a fishing pole and tackle box across the street from the bank on the same night.

Two nights later, September 13, an automobile agency in Windsor (12 miles from North Thompsonville) was broken into; cash, a money bag, a gun and ammunition were taken. The following morning, September 14, at about 8 A.M., the owner of the automobile agency turned over to the Windsor police a receipt dated September 13 for Room 1540 at the Statler Hotel in Hartford which he had found under the window through which the break at the automobile agency had been made the night before. The police inspected the scene of the break at the automobile agency and found bloodstains from which they inferred that whoever broke into the building may have cut himself.

That same morning, September 14, the Windsor police, pursuing their investigation of the automobile agency break,

---

* Chief Judge of the District of Connecticut, sitting by designation.

learned from the manager of the Statler that the occupant of Room 1540 was one "Fred Herter" who had registered the night of September 11; and one of the clerks at the Statler told the police, "There was a man there with a bandage on his face." Three Windsor police officers, together with a Hartford police detective, thereupon went to the Statler in Hartford (7 miles from Windsor) where they arrived at 9:15 A.M. They had neither a search warrant nor an arrest warrant. Accompanied by the manager, the four police officers proceeded to Room 1540 and knocked several times on the door. There was no response, although movements in the room were heard.

One of the police officers went to a house phone 40 or 50 feet down the hall and called Room 1540. When the occupant answered, the officer said, "This is the police; we would like to come in and talk to you." The occupant replied, "All right." After the occupant opened the door and before the officers entered, they again identified themselves as policemen and again asked permission to enter. The occupant said, "Come on in." As they entered the room, the officers explained they were investigating several burglaries in the area and asked permission to look around the room. The occupant said, "Go ahead."

As the door to the room was opened, one of the officers noticed a 3″ x 1½″ bandage over the occupant's right forehead. Another of the officers testified that when he saw the freshly bandaged cut on the occupant's head as he opened the door, he "felt 99 per cent sure" that the occupant was the man they were looking for in connection with the automobile agency break.

Upon entering the room, the officers saw protruding from an open bureau drawer a money bag which proved to be the one taken from the automobile agency. Once the police were in the room, upon request of one of them, the occupant pointed to a gun under the bed which turned out to be the one taken from the automobile agency. They also discovered in the room the fishing pole and tackle box which had been taken from the garage adjoining the bank the night the bank was entered. Several rolls of coins were found in the room which later were traced to the bank which was entered the night of September 11.

The occupant of the room was formally arrested by one of the Windsor police officers immediately upon discovery of the money bag. He was taken to Hartford police headquarters and booked on the charge of breaking and entering the automobile agency; later that day he was taken to Windsor and booked on the same charge. The following morning, September 15, the occupant, having been identified as appellant on the basis of the name found in his wallet in the room at the Statler, was arraigned in the State Circuit Court at Enfield on the same charge and was remanded to the State Jail at Hartford. The following day, September 16, he was interviewed by two FBI agents who obtained his fingerprints, under circumstances related below, to compare them with fingerprints discovered at the bank after its entry. Appellant was indicted by a Federal grand jury on September 18 on the charge of entering the bank with intent to commit a felony.

Pursuant to Rule 41(e), Fed.R.Crim. P., appellant moved to suppress the evidence seized from his hotel room, including the money taken from the bank, the gun, ammunition and money bag taken from the automobile agency two nights later and the fishing pole and tackle box taken from the garage adjoining the bank the night the bank was entered, all of which was either directly or circumstantially relevant and material (its competence being the ground of objection) to connecting appellant with the offense of entering the bank. After a full evidentiary hearing before trial, the motion to suppress was denied on the ground appellant voluntarily consented to the search. At the trial, a renewed motion to suppress was denied and the evidence was admitted over appellant's objection. We

hold that Judge Clarie's rulings in each instance were correct.

*Voluntary Consent to Search*

 In upholding voluntary consents to search, we have said that "Of course the search and seizure in each case must stand or fall on its own special facts, and in the district court's judgment of the credibility of the witnesses," United States v. Dornblut, 261 F.2d 949, 950–951 (2 Cir. 1958), cert. denied, 360 U.S. 912, 79 S.Ct. 1298, 3 L.Ed.2d 1262 (1959), and that "A consent is not a voluntary one if it is the product of duress or coercion, actual or implicit. Moreover, to be voluntary, a consent must have been unequivocal, specific, and intelligently given." United States v. Smith, 308 F.2d 657, 663 (2 Cir. 1962), cert. denied, 372 U.S. 906, 83 S.Ct. 717, 9 L.Ed.2d 716 (1963).

 Appellant need not have had a positive desire that the search be conducted in order for his consent to have been voluntary and effective. He had three opportunities to object to the entrance and search by the police. Each time, in response to the requests of the police to enter his room or to look around, he replied, "All right," "Come on in," or "Go ahead." The record is devoid of any evidence of displeasure on his part. Nor was there any evidence of exhaustive questioning, persistent demands or coercive action on the part of the police.

Appellant testified, at the hearing before trial on the motion to suppress, that he did not object because it would have been ineffectual. From our perspective his permissive attitude may seem foolhardy; it is on this basis that we are asked to draw an inference of coercion. Perhaps there is a coercive effect inherently produced when several police officers, with their uniforms and accompanying paraphernalia, confront a suspect and ask for permission to search. To sustain such a claim of coercion, absent any coercive words or acts by the police, would preclude a voluntary consent to search whenever more than one armed police officer confronts a suspect; it is

only their number, their equipment and the fact they were police that appellant claims adds up to coercion. We refuse to so hold.

Appellant had to make a hurried choice. He lacked knowledge as to whether the police were searching the entire hotel or had focused on him. He knew nothing of the police discovery of the room receipt, of the bloodstains at the automobile agency, of the indication that the room occupant had a bandage on his face or of the money bag protruding from the open bureau drawer. It is irrelevant whether appellant consented in the hope that the officers were only routinely checking the hotel and would move on, or because he believed the police had caught up with him and his best course would be to cooperate. In either circumstance his consent was "unequivocal, specific and intelligently given." On the facts of this case, Judge Clarie properly denied the motion to suppress after hearing the evidence and evaluating the credibility of the witnesses; and he correctly admitted the seized evidence at the trial over objection. United States v. Smith, supra at 663–664; United States v. Dornblut, supra at 950–951; United States v. Bracer, 342 F.2d 522, 524–525 (2 Cir. 1965); United States v. Simpson, 353 F.2d 530, 531 (2 Cir. 1965); United States v. Ziemer, 291 F.2d 100 (7 Cir. 1961), cert. denied, 368 U.S. 877, 82 S.Ct. 120, 7 L.Ed.2d 78 (1961); cf. United States v. Page, 302 F.2d 81 (9 Cir. 1962) (en banc).

We are mindful of the importance of careful delineation of the facts of a case such as the instant one, where the district court's finding of voluntary consent to search was based on a consent which was unequivocal, specific and intelligently given, from cases where the consent to search was the product of deceit and coercion, actual or implicit, rather than an understanding and intentional waiver of a constitutional right. Compare Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921); Gouled v. United

States, 255 U.S. 298, 303–306, 41 S.Ct. 261, 65 L.Ed. 647 (1921); United States v. Como, 340 F.2d 891 (2 Cir. 1965); United States v. Gregory, 204 F.Supp. 884 (S.D.N.Y.1962), aff'd on other grounds, 309 F.2d 536 (2 Cir. 1962), cert. denied, 373 U.S. 953, 83 S.Ct. 1684, 10 L.Ed.2d 707 (1963).

This is another sensitive area where constant vigilance is required to maintain the delicately calibrated balance between the rights of the individual suspected or accused of crime and the rights of society to be protected from criminal interference with its liberty and property. Cf. United States v. Cone, 354 F.2d 119, 128 (2 Cir. 1965) (en banc); United States v. Robinson, 354 F.2d 109, 114–115 (2 Cir. 1965) (en banc); United States v. Drummond, 354 F.2d 132, 143 (2 Cir. 1965) (en banc). In dealing with the difficult issues of a voluntary consent to search, we have observed that "in few branches of the law is a precise case by case analysis and meticulous comparison of precedential authority so essential." United States v. Como, supra at 893. We think it also important in this process of defining the permissible bounds of searches and seizures to make clear what we believe to be correct police procedure, as we have not hesitated to condemn it when wrong. The instant case is part of a swelling wave of federal bank robberies which has been engulfing the Country.[1] The tools the police most need and deserve to cope with this emergency are guideline decisions from the courts telling them what is right as well as what is wrong with their procedure so that they may get on with their job intelligently.

We think the police work in the instant case was commendable. The bank entry in North Thompsonville occurred Friday night, September 11; no clues were left. The breaking and entry at the automobile agency in Windsor came two nights later, Sunday night, September 13; the only clues were the receipt for Room 1540 at the Statler in Hartford, bloodstains near the broken window and the missing gun, ammunition and money bag—all of which the Windsor police learned about at 8 A. M. on Monday, September 14. An hour later the Windsor police and a Hartford detective were at Room 1540, accompanied by the Statler manager. The steps which the police pursued in gaining entrance to the hotel room, searching it, seizing the contraband and arresting appellant speak for themselves in reflecting credit upon police activity of the highest order.

*Search Incidental to Lawful Arrest*

While we uphold Judge Clarie's ruling that the evidence in question was seized pursuant to a voluntary consent to search, we note that the record also would support a holding that the search was permissible as an incident to a lawful arrest. United States v. Simpson, supra; United States v. Hall, 348 F.2d 837, 841–842, 843 (2 Cir. 1965), cert. denied, 382 U.S. 947, 86 S.Ct. 408, 15 L.Ed.2d 355 (1965); United States v. Bracer, supra at 523–524; United States v. Smith, supra at 661–663.

---

1. Based on information compiled by the Federal Bureau of Investigation, the following bank robberies (violations of 18 U.S.C. § 2113) were committed in the United States during each of the following fiscal years ending June 30:

 1962 ................ 598
 1963 ................ 776
 1964 ................ 1014
 1965 ................ 1143

 During each of the following calendar years, according to the FBI, the following bank robberies (violations of 18 U.S.C. §

2113) were committed in the District of Connecticut:

 1962 ................ 2
 1963 ................ 12
 1964 ................ 23
 1965 (through Nov. 4) 18

 In connection with the 55 bank robberies committed in Connecticut during the period since January 1, 1962, 58 persons have been apprehended and convicted (39 in the federal court, 19 in the state court); 1 has been acquitted; 3 are awaiting trial in the federal court; *and 16 of the bank robberies, or 29%, remain unsolved.*

■ Although formal announcement of appellant's arrest was made upon discovery of the money bag protruding from the bureau drawer in the hotel room, actually his arrest was complete as soon as the police entered the room and restricted his liberty of movement. Henry v. United States, 361 U.S. 98, 103, 80 S. Ct. 168, 4 L.Ed.2d 134 (1959); United States v. Boston, 330 F.2d 937, 939 (2 Cir. 1964), cert. denied, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964). Immediately upon entering the room, the police told appellant not to move. Although no force was used to obtain entry or after entry, appellant considered himself under restraint for he requested and obtained permission to get dressed.

■■ Appellant having been arrested immediately upon entry of the police into the hotel room, the question arises whether there was probable cause for the arrest at or before that time and without regard to what the subsequent search disclosed. Henry v. United States, supra at 103; Johnson v. United States, supra at 14–17; United States v. Boston, supra at 938–939. Before entering the hotel room, the police inferred, on the basis of the receipt for Room 1540 found under the window through which the break at the automobile agency had been made, that

the occupant of the hotel room may have had something to do with that crime. Strong corroboration for such inference is found in the information given to the police by one of the Statler clerks that the occupant of Room 1540 had a bandage on his face, coupled with the police knowledge that bloodstains had been found near the broken window at the automobile agency. Moreover, although the police did not intend to arrest appellant when they went to Room 1540, one of the officers said he felt 99 per cent sure that appellant was the man they were looking for in connection with the automobile agency break when appellant opened the door and the officer saw the bandage on appellant's head. This was more than mere suspicion; and certainty is not required for a finding of probable cause. Henry v. United States, supra at 101–104; Draper v. United States, 358 U.S. 307, 311–312, 79 S.Ct. 329, 3 L.Ed. 2d 327 (1959); United States v. Heitner, 149 F.2d 105, 106 (2 Cir. 1945).

■■ There was probable cause for appellant's arrest; and the search, aside from having been consented to, may be sustained on the alternative ground of being a reasonable one [2] incidental to a lawful arrest. Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.

2. The criteria upon which the Supreme Court upheld the *reasonableness* of the search in United States v. Rabinowitz, 339 U.S. 56, 64, 70 S.Ct. 430, 94 L.Ed. 653 (1950), were likewise present, with one exception, in the instant case:

(1) the search and seizure were incident to a valid arrest:

(2) the place of the search was a business room to which the public, including the officers, was invited;

(3) the room was small and under the immediate and complete control of [appellant];

(4) the search did not extend beyond the room used for unlawful purposes; and

(5) the possession of the [stolen property] was a crime.

Criterion (2) is the only one not on all fours with the instant case. While the officers here were invited to enter the room, it cannot be said that appellant's hotel room was a "business room

to which the public * * * was invited." Searches of dwellings and hotel rooms nevertheless have been upheld as reasonable. Abel v. United States, 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Harris v. United States, 331 U.S. 145, 151, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); United States v. Boston, supra at 939; United States v. Williams, 336 F.2d 183 (2 Cir. 1964), cert. denied, 379 U.S. 857, 85 S.Ct. 112, 13 L.Ed.2d 60 (1964); Bartlett v. United States, 232 F.2d 135 (5 Cir. 1956); United States v. Lodewijkx, 230 F.Supp. 212, 217–218 (S.D.N.Y.1964); cf. United States v. Hall, supra at 843. And the Court in Rabinowitz made it clear that "The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case." Id. at 63.

We hold under the facts and circumstances of the instant case that the search was reasonable.

2d 777 (1964); Ker v. California, 374 U.S. 23, 34–37, 83 S.Ct. 1623, 10 L.Ed. 2d 726 (1963); United States v. Rabinowitz, 339 U.S. 56, 60–66, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed.2d 1879 (1949); United States v. Simpson, supra; United States v. Hall, supra at 841–843; United States v. Bracer, supra at 523–524; United States v. Boston, supra at 938–939; United States v. Williams, 336 F.2d 183 (2 Cir. 1964), cert. denied, 379 U.S. 857, 85 S.Ct. 112, 13 L.Ed.2d 60 (1964); United States v. Wai Lau, 329 F.2d 310 (2 Cir. 1964), cert. denied, 379 U.S. 856, 85 S.Ct. 108, 13 L.Ed.2d 59 (1964); United States v. Smith, supra at 661–663; Crawford v. Bannan, 336 F.2d 505 (6 Cir. 1964); Bartlett v. United States, 232 F.2d 135, 138–139 (5 Cir. 1956); United States v. Lodewijkx, 230 F.Supp. 212, 217–218 (S.D.N.Y.1964).

As a second string to his bow, appellant argues that even if there was probable cause for the arrest it was unlawful because made in Hartford by a Windsor police officer outside of his precinct (referring to the Town of Windsor) in violation of the Connecticut Arrest Law.[3] State law is controlling on this issue of the validity of an arrest without a warrant absent an applicable federal statute. United States v. Di Re, 332 U.S. 581, 589–590, 68 S.Ct. 222, 92 L.Ed. 210 (1948); United States v. Viale, 312 F.2d 595, 599 (2 Cir. 1963), cert. denied, 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963). The Connecticut courts, so far as we can determine, have not ruled upon the issue here presented.[4] The second clause of the first sentence of § 6–49 (the italicized portion of the statute printed in the margin) clearly authorizes any state police officer, local police officer or county detective to arrest without a warrant *any place in the State* any person who he has reasonable grounds to believe has committed or is committing a felony; "reasonable grounds" and "probable cause" in this context have substantially the same meaning. United States v. Boston, supra at 938 n. 1. The limitation in the first clause of the first sentence of § 6–49 to warrantless arrests "in their respective precincts" applies (i) to the arresting officers specified in that clause *and* (ii) to suspects

3. Conn.Gen.Stats. § 6–49 (Supp.1964):
 "Sheriffs, deputy sheriffs, county detectives, constables, borough bailiffs, police officers, special protectors of fish and game and railroad and steamboat policemen, in their respective precincts, shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when such person is taken or apprehended in the act or on the speedy information of others, *and members of the state police department or of an organized local police department or county detectives shall arrest, without previous complaint and warrant, any person who such officer has reasonable grounds to believe has committed or is committing a felony.* Members of an organized local police department, when in immediate pursuit of one who may be arrested under the provisions of this section, are authorized to pursue such offender outside of their respective precincts into any part of the state in order to effect the arrest. Such person may then be returned in the custody of such officer to the precinct in which the offense was committed. Any person so arrested shall be presented with reasonable promptness before proper authority." (Emphasis added.)

4. The cases cited by counsel on this appeal are not in point: Zanks v. Fluckiger, 22 Conn.Supp. 311, 314, 171 A.2d 86, 88 (1961), cited by appellant, holds that a constable was not authorized to make an arrest without a warrant outside his precinct (first clause of first sentence of § 6-49); and Martyn v. Donlin, 151 Conn. 402, 409, 198 A.2d 700, 704 (1964), cited by appellee, holds no more than the statute says, namely, that even though a police officer did not see a suspect commit a felony or receive speedy information to that effect, he could still make a lawful arrest without a warrant if he had reasonable grounds to believe the suspect has committed or is committing a felony (second clause of first sentence of § 6-49).
 See Burke v. New York, New Haven & Hartford Railroad Co., 267 F.2d 894, 898–899 (2 Cir. 1959).

taken or apprehended in the act or on the speedy information of others. The second and third sentences of § 6–49, added in 1961 by Public Act 239, authorize local police officers, in immediate pursuit of anyone they are empowered to arrest under this statute, to pursue such person any place in the State to arrest him, and to return him to the place of the offense.

 Appellant's arrest was clearly lawful under the Connecticut Arrest Law. At the time of his arrest in the hotel room in Hartford, the police (three from Windsor and one from Hartford[5]) had probable cause, as we have held above, to arrest him; that is to say, in the statutory language of § 6–49, the police had reasonable grounds to believe he had committed a felony. The offense of which he was suspected—breaking and entering the automobile agency in Windsor—is a felony under Conn.Gen.Stats. §§ 1–1, 53–76, 53–77, 53–78 (1958). After being arrested and booked at Hartford police headquarters, he was taken the same morning to Windsor police headquarters where he was booked again.

## FINGERPRINT EVIDENCE

 Appellant claims that "major case fingerprints" taken by two FBI

agents from appellant while he was held at the Hartford State Jail on September 16, two days after his arrest, were erroneously admitted over his objection because obtained as the tainted fruit of his unlawful arrest and detention.[6]

 Having held that appellant's arrest was lawful, we turn directly to his claim that he was unlawfully detained at the time the fingerprints in question were taken.[7] The short answer to appellant's claim of unlawful detention on September 16 is that he had been arraigned the previous day, September 15, at 10 A.M. in the State Circuit Court at Enfield, at which time, among other things, counsel had been appointed to represent him.

 Appellant argues that unnecessary and unreasonable delay until the morning of September 15 in arraigning him, having been arrested by Windsor and Hartford police the previous morning, resulted in an illegal detention on September 15 which somehow carried over to invalidate his detention on September 16 when the fingerprints were taken by FBI agents, even though subsequent to arraignment. Without accepting appellant's conclusion, there is no merit whatsoever in his premise that

5. The presence of a Hartford police detective, together with the three Windsor police officers, when the police entered the room and restricted appellant's liberty of movement—thus completing appellant's arrest as we have held above—would make the arrest lawful even under appellant's erroneous reliance on the first clause of the first sentence of § 6-49.

6. Appellant argues that, under Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), any evidence obtained as the product of an unlawful arrest (without a warrant when there was time to obtain one) should be excluded for the same reasons that the fruit of an illegal search and seizure is excluded, the Fourth Amendment requiring the same standards for testing an unlawful arrest as an unlawful search and seizure. We have recently considered and rejected this argument, noting that it "would impose on the law of arrest a requirement thus far confined to the law of search and seizure" and that

"it does not follow that the test of propriety with respect to the two subjects has been or should be precisely the same." United States v. Hall, 348 F.2d 837, 841 (2 Cir. 1965), cert. denied, 382 U.S. 947, 86 S.Ct. 408, 15 L.Ed.2d 355 (1965).

7. Appellant raises no claim regarding the routine fingerprints taken from him when he was booked at Hartford police headquarters on September 14 immediately following his arrest and those taken later the same day when he was booked at Windsor police headquarters, in each instance prior to his arraignment in the State Circuit Court. Taking of such fingerprints was proper as a "method of identifying persons charged with crime which has now become widely known and frequently practiced both in jurisdictions where there are statutory provisions regulating it and where it has no sanction other than the common law." United States v. Kelly, 55 F.2d 67, 70, 83 A.L.R. 122 (2 Cir. 1932).

there was unnecessary and unreasonable delay in arraigning him, even assuming that cooperation (for which there is no support in the record) between state and federal officials resulted in his detention during the 24 hour period prior to arraignment. Cf. United States v. Coppola, 281 F.2d 340 (2 Cir. 1960) (en banc), aff'd, 365 U.S. 762, 81 S.Ct. 884, 6 L.Ed.2d 79 (1961). The sole purpose of appellant's detention between his arrest on September 14 and his arraignment on September 15 was investigatory—to question him, to check his story and to run down leads either confirming or contradicting his story. Cf. United States v. Middleton, 344 F.2d 78, 83 (2 Cir. 1965); United States ex rel. Corbo v. LaVallee, 270 F.2d 513, 518 (2 Cir. 1959), cert. denied, 361 U.S. 950, 80 S.Ct. 403, 4 L.Ed.2d 382 (1960). The reasonableness and necessity of the period during which this investigation continued is borne out by the number of offenses of which he was suspected (three breaks and entries, in addition to the bank entry), the fact he had used a fictitious name and the fact he had escaped three days before the bank entry from a mental institution apparently without knowledge of that institution. The purpose of his detention was not to keep him in custody for an indefinite period until he confessed; in fact, no claim is raised on this appeal of any alleged confession obtained during his detention other than the fingerprints taken after he was arraigned. Appellant's detention prior to arraignment was not unlawful. United States v. Hall, 348 F.2d 837, 842–843 (2 Cir. 1965), cert. denied, 382 U.S. 947, 86 S.Ct. 408, 15 L.Ed.2d 355 (1965); United States v. Middleton, supra at 82–83; United States v. Vita, 294 F.2d 524 (2 Cir. 1961), cert. denied, 369 U.S. 823, 82 S.Ct. 837, 7 L.Ed.2d 788 (1962); United States v. Ladson, 294 F.2d 535 (2 Cir. 1961), cert. denied, 369 U.S. 824, 82 S.Ct. 840, 7 L.Ed.2d 789 (1962); United States v. Coppola, supra.

We hold that appellant's fingerprints were not obtained as the product of an unlawful arrest or detention and therefore were properly admitted in evidence.

Having reached this conclusion, it is unnecessary for us to consider whether appellant freely consented to the taking of the fingerprints in question after being fully informed of his rights and of the purpose for which the fingerprints were sought, although we do note there is substantial evidence that he did so consent. Moreover, we need not, and therefore do not, reach the question whether fingerprints obtained during detention following an unlawful arrest are necessarily inadmissible. See Bynum v. United States, 262 F.2d 465 (D.C.Cir. 1958); Note, Excluding From Evidence Fingerprints Taken After an Unlawful Arrest, 69 Yale L.J. 432 (1960).

### INSUFFICIENCY OF INDICTMENT

Finally, appellant claims that the indictment [8] failed to charge an offense against the United States in that, in charging that appellant entered the bank "with intent to commit in such bank a felony affecting such bank, that is, the taking of money in excess of $100.00 from the said bank," the indictment did not charge the essential elements of a federal felony affecting such bank.

The indictment charged an offense under, and in the language of, 18 U.S.C. § 2113(a) ¶ 2,[9] that appellant entered the

---

8. The one count indictment reads as follows:

"That on or about September 11, 1964, at Enfield, Connecticut, within the jurisdiction of this Court, GORDON R. THOMPSON, the defendant herein, did enter the First National Bank of Windsor Locks, North Thompsonville Branch, Thompsonville, Connecticut, which bank is insured by the Federal Deposit Insurance Corporation, Certificate No. 16587, with intent to commit in such bank a felony affecting such bank, that is, the taking of money in excess of $100.00 from the said bank, in violation of Title 18, United States Code, Section 2113(a)."

9. 18 U.S.C. § 2113(a) ¶ 2:

"Whoever enters or attempts to enter any bank, or any savings and loan association, or any building used in

bank with intent to commit in the bank a felony affecting such bank in violation of a federal statute. Specifying the "felony affecting such bank," the indictment went on to add, "that is, the taking of money in excess of $100.00 from the said bank," intending to incorporate the offense covered by 18 U.S.C. § 2113(b) ¶ 1.[10]

■ In omitting the essential element of "intent to steal" from its specification of the § 2113(b) ¶ 1 offense, the indictment certainly was defective. At best the indictment was poorly drawn; [11] at worst it did not constitute a "plain, concise and definite written statement of the essential facts constituting the offense charged," Rule 7(c), Fed.R.Crim. P., and as such would have warranted corrective action by the district court upon a timely motion to dismiss, Rule 12(b), Fed.R.Crim.P., or a motion for a bill of particulars, Rule 7(f), Fed.R. Crim.P. No such motion was made.

The case was tried by both sides upon the clear understanding that the "felony affecting such bank" referred to in the indictment was the offense specified in § 2113(b) ¶ 1. Judge Clarie so charged the jury. Among the essential elements carefully included in the charge was that

of intent to steal. Compare United States v. Byrd, 352 F.2d 570 (2 Cir. 1965). No exceptions were taken to the charge.

■ Appellant's claim that the indictment did not charge an offense against the United States was first made on a motion in arrest of judgment, Rule 34, Fed.R.Crim.P., filed five days after conclusion of the trial and six months after the indictment was returned. The claim came too late. Technically, a claim that the indictment does not charge an offense may be raised on a motion in arrest of judgment and such motion was made in time here. But the courts of the United States long ago withdrew their hospitality toward technical claims of invalidity of an indictment first raised after trial, absent a clear showing of substantial prejudice to the accused— such as a showing that the indictment is "so obviously defective that by no reasonable construction can it be said to charge the offense for which conviction was had." Finn v. United States, 256 F.2d 304, 307–308 (4 Cir. 1958); McGann v. United States, 249 F.2d 431, 432 (4 Cir. 1957), cert. denied, 356 U.S. 923, 78 S.Ct. 708, 2 L.Ed.2d 718 (1958); Gibson v. United States, 244 F.2d 32, 34 (4 Cir.

---

whole or in part as a bank, or as a savings and loan association, with intent to commit in such bank, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both."

This section of the statute, § 2113(a) ¶ 2, was amended by the Act of June 25, 1948, 62 Stat. 796, by changing "felony or larceny" to "felony affecting such bank * * * and in violation of any statute of the United States, or any larceny," thus conforming with Jerome v. United States, 318 U.S. 101, 63 S.Ct. 483, 87 L.Ed. 640 (1943), which construed the term "felony" to exclude state felonies and to include only those federal felonies which affect the banks protected by the Act.

10. 18 U.S.C. § 2113(b) ¶ 1:
"Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both."
It should be noted that § 2113(a) ¶ 2, under which appellant was charged, carries a 20 year and/or $5,000 maximum penalty, whereas § 2113(b) ¶ 1 carries a 10 year and/or $5,000 maximum penalty. Appellant was sentenced to 9 years.

11. Government counsel assured us upon argument of this appeal that the form of the instant indictment is not in accordance with the policy of the Department of Justice or of the office of the United States Attorney for the District of Connecticut.

1957); Olson v. United States, 234 F.2d 956, 957 (4 Cir. 1956); Aaron v. United States, 188 F.2d 446 (4 Cir. 1951), cert. denied, 341 U.S. 954, 71 S.Ct. 1006, 95 L.Ed. 1376 (1951); Dickerson v. United States, 175 F.2d 440 (4 Cir. 1949); Fippin v. United States, 162 F.2d 128, 131 (9 Cir. 1947); Pifer v. United States, 158 F.2d 867, 868 (4 Cir. 1946), cert. denied, 329 U.S. 815, 67 S.Ct. 636, 91 L. Ed. 695 (1947); Lucas v. United States, 158 F.2d 865, 867 (4 Cir. 1946), cert. denied, 330 U.S. 841, 67 S.Ct. 977, 91 L. Ed. 1287 (1947); Muench v. United States, 96 F.2d 332, 334–335 (8 Cir. 1938).

Here there was no prejudice whatsoever. Judge Clarie properly denied the motion in arrest of judgment.

Affirmed.

 We express our appreciation to Maxwell Heiman, Esq., court-appointed counsel on appeal, for his conscientious and able brief and oral argument on behalf of appellant in this Court.[12]

12. We regret that we feel constrained to deny Mr. Heiman's motion (which we invited at the time of the argument) to reappoint him as counsel for appellant effective as of a date subsequent to August 20, 1965 so that he might apply for compensation for services rendered appellant on this appeal pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A. Upon the discharge of appellant's court-appointed counsel in the District Court, Judge Clarie appointed Mr. Heiman on May 10, 1965 to represent appellant on appeal. The bulk of his work, including preparation of the brief and arguing the appeal, was done subsequent to August 20, 1965, the effective date of the plans of this Court and the District Court under the Criminal Justice Act. Once appointed by the District Court, he was required to continue to represent appellant unless or until he was relieved by this Court (Connecticut District Court Plan, Article V, Section (C)); hence no further order of appointment by this Court was required to authorize him to represent appellant in this Court. And he is on the panel of counsel designated by this Court from which appointments are made to represent appellants in this Court. The sole reason for our denying his motion is that, although the services for which he wishes to be compensated were rendered subsequent to August 20, 1965, his appointment was prior thereto. In administering funds appropriated by Congress, we are not authorized to approve payments for services rendered or for reimbursement of expenses incurred unless the services were rendered or the expenses were incurred pursuant to an order appointing counsel entered on or after August 20, 1965. Entry now of a *nunc pro tunc* order of reappointment as of a date subsequent to August 20, 1965 to permit compensation for services rendered subsequent thereto would be contrary to what we understand to be the intention of Congress with respect to the administration of funds appropriated under the Criminal Justice Act. The motion accordingly is denied.

Our denial of Mr. Heiman's motion for reappointment as counsel for appellant, however, is without prejudice to his filing an application pursuant to Rule 6 of the Rules of this Court for reimbursement (out of the fund of admission fees held by the clerk) for his out-of-pocket expenses incurred as assigned counsel in representing an indigent person.