**UNITED STATES of America,**
**Appellee,**

v.

**Rudolph LEWIS, Appellant.**

**No. 421, Docket 30177.**

United States Court of Appeals
Second Circuit.

Argued June 2, 1966.

Decided June 29, 1966.

Joshua N. Koplovitz, New York City (Anthony F. Marra, New York City, on the brief), for appellant.

John A. Stichter, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, Michael S. Fawer, Asst. U. S. Atty., on the brief), for appellee.

Before MOORE, SMITH and KAUFMAN, Circuit Judges.

KAUFMAN, Circuit Judge:

Challenging principally the regularity of his arrest and the propriety of the court's charge, Rudolph Lewis appeals from a felony conviction [1] for violating 18 U.S.C. § 659 (possession of goods stolen from interstate commerce) after a trial in the Southern District before Chief Judge Taylor and a jury.[2] Lewis was charged with unlawful possession of a carton containing twenty-nine women's dresses being shipped by Lerner Shops in Atlanta, Georgia to the manufacturer of the garments, Gro-Young, New York, N. Y. via REA Express Company (REA). For the reasons set forth below, we affirm.

I.

The evidence, briefly set forth, reveals that Lewis was apprehended in the following manner. In the early morning hours (approximately 1:15 A.M.) of August 22, 1965, one William Sadler, a tractor driver employed by REA, had exited from the REA terminal located at 42d Street and 11th Avenue in Manhattan and stopped for a traffic light close by. At that time, Sadler observed a man, later identified as Lewis, walking directly in front of his tractor carrying a brown carton which looked like it came from REA. After the light changed, Sadler sought out the police and reported his observation to New York City Patrolmen Murphy and Connor who were in the vicinity. He proceeded with them in their radio car to locate the individual he had just observed.

When stopped by the police and queried on the street, Lewis explained that he had found the carton a short distance away under an overhang between 10th and 11th Avenues on 41st Street. He stated that he had inquired of an old woman standing next to the carton, whether it belonged to her and upon her negative reply, he decided to take it. In response to inquiries concerning Lewis' presence in the vicinity of the terminal, Lewis claimed that he was employed by the Circle Line at 42d Street and 12th Avenue as a deck swabber, and had just finished his work for the night. When the police, however, indicated that they intended to verify this statement, Lewis admitted that he did not work for the Circle Line.

During these few moments of street inquiry, Lewis placed the carton on the hood of a parked car. Murphy then was able to observe that the package had been opened and the seals and labels removed. In addition, he noticed an imprinted stamp bearing the words "REA" and "Atlanta, Georgia." Sadler, at the policeman's request, examined the package and confirmed that REA utilized such a stamp for the purpose of indicating the source of shipments. Lewis was then taken into custody and ultimately turned over to the Federal Bureau of Investigation.

■ Based on this factual setting, Lewis contends that the police lacked the

---

1. Lewis was sentenced to a term of 20 months' imprisonment.

2. Chief Judge Taylor of the Eastern District of Tennessee was sitting by designation.

"reasonable suspicion" required by New York's "Stop-and-Frisk" law, New York Code of Criminal Procedure, Section 180–a,[3] as a prerequisite for detaining him.[4] It is urged that since Sadler did not actually see Lewis appropriate the carton, he was unable to impart sufficient information to the officers to create a "reasonable suspicion" in their minds. We find this contention unpersuasive. Sadler identified himself to the policemen as a REA employee and expressed a willingness to accompany them during their effort to locate the individual he had seen carrying the suspected carton. As competent police officers, they were justified in concluding that Sadler was not making a complaint wholly devoid of merit. Moreover, the evidence disclosed that Patrolmen Murphy and Connor were veteran policemen seasoned in the neighborhood and familiar with the frequency of similar criminal occurrences. And, Murphy testified that on some days he investigated as many as 10 to 12 thefts from businesses in the area; on two prior occasions his investigations specifically concerned thefts from REA. It also appeared that Lewis was stopped on this rainy Sunday morning between the hours of 1 and 2 A.M.—a time when most businesses in the area were closed and the likelihood of a legitimate purchase minimal. Furthermore, in light of Sadler's identification of Lewis as the same man he had seen moments before near the REA terminal, we believe that all the circumstances justified experienced and neighborhood-wise police in reasonably suspecting that Lewis had improperly taken possession of the package. A fortiori, the brief questioning on the street was entirely proper; indeed, any other course would have shown poor judgment and a callousness towards property police action. See People v. Rivera, 14 N.Y.2d 441, 252 N.Y.S.2d 458, 201 N.E.2d 32 (1964); People v. Hoffman, 24 A.D.2d 497, 261 N.Y.S.2d 651 (2d Dept. 1965).

Of course, once Lewis equivocated in explaining his presence in the area and the police officers observed the imprinted stamps "REA" and "Atlanta, Georgia" and that the seals and labels already referred to were missing from the package, their "reasonable suspicions" properly rose to the level of "probable cause" justifying Lewis' arrest and the incidental search of the carton. See, e. g., United States v. Wai Lau, 329 F.2d 310 (2d Cir.), cert. denied, 379 U.S. 856, 85 S.Ct. 108, 13 L.Ed.2d 59 (1964); United States v. Moon, 351 F.2d 464 (2d Cir. 1965); United States ex rel. Mason v. Murphy, 351 F.2d 610 (2d Cir. 1965); United States v. Thompson, 356 F.2d 216 (2d Cir. 1965).

## II.

Lewis claims, in addition, that the trial judge erred in his instruction to the jury on the method to be employed in calculating the value of the misappropriated dresses. The issue is of some importance and not one of mere mathematical significance because it is argued that if the jury could determine the dresses had a value of less than $100, Lewis might have been found guilty of a misdemeanor only, for which the maximum jail sentence pursuant to Section 659 was 12 months.[5]

The evidence on this issue may be summarized as follows: The cost for Gro-Young to manufacture a dress was $4.25 and the selling price to Lerner Shops, the retailer, was $5.25. Thus, the 29 misappropriated dresses cost $123.25 to

3. New York Code of Criminal Procedure, Section 180-a, provides in pertinent part:
    A police officer may stop any person abroad in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or [certain other specified crimes]
* * *, and may demand of him his name, address and an explanation of his actions.

4. Lewis does not challenge the constitutionality of Section 180-a.

5. See n. 1, supra.

manufacture and sold at wholesale for $152.25. The dresses never sold for less than their wholesale price except, perhaps, in August when the season for this apparel had ended. In this case, however, the dresses were being returned by Lerner Shops to Gro-Young for credit at the rate of $5.25 each; and, while none of the 29 misappropriated dresses had been inspected by Gro-Young, its production manager, Louis Deneroff, did examine a companion parcel shipped at the same time by Lerner's and found that not a single dress was defective in any way.

The jury was instructed by the district judge that value was "face [par], or market value, or cost price, either wholesale or retail, whichever is greater." In so charging, the judge employed the definition of "value" appearing in 18 U.S.C. § 641 (theft of government property), there being no exposition of the meaning of the term as utilized in 18 U.S.C. § 659, under which Lewis was prosecuted.

Despite his failure to object to this instruction, Lewis contends that Judge Taylor committed plain error by not charging in the language of 18 U.S.C. § 2311 (transportation or sale of stolen vehicles, securities, cattle, etc.) that "value" is "face, par, or market value, whichever is the greatest." The thrust of Lewis' argument is that the Section 641 definition of value was improperly transplanted into Section 659 by Judge Taylor's charge. The Section 641 provision, it is urged, was designed to protect government-owned property which might not have a readily ascertainable market value and hence might be reasonably appraised in terms of cost. In contrast, it is Lewis' claim that Sections 659 and 2311 deal with merchandise passing in commerce and which, in most instances, has a determinable market value. He forcefully urges, therefore, that the Section 2311 test should have been utilized.

The government counters by observing that Sections 641 and 659 appear in Chapter 31 of Title 18, while Section 2311 is set forth in Chapter 113. The government suggests further, that it would be violative of the statutory scheme to inject a Chapter 113 definition of value into Chapter 31, especially in the face of the express provision in Section 2311 that the definitions provided there are applicable to Chapter 113. And, it urges that at least one Circuit repeatedly has found this argument persuasive. See Torres v. United States, 270 F.2d 252 (9th Cir. 1959), cert. denied, 362 U.S. 921, 80 S.Ct. 675, 4 L.Ed. 2d 741 (1960); Sachs v. United States, 281 F.2d 189 (9th Cir.), cert. denied, 364 U.S. 909, 81 S.Ct. 272, 5 L.Ed.2d 224 (1960); Russell v. United States, 288 F.2d 520 (9th Cir. 1961), cert. denied, 371 U.S. 926, 83 S.Ct. 296, 9 L.Ed.2d 234 (1962).

■■■ On the facts presented here, however, there is no need to resolve this issue nor determine whether the judge's instruction which Lewis faults, rises to plain error. It appears from the record that during the course of its deliberations, the jury requested supplemental instructions on the issue of value, which when given by the judge, fully complied with all the defendant sought. Concerned over the proper measure of value, one juror posed this question:

> We were given the cost price and the wholesale price but if we were to decide that the market value at the present time was less than that or greater than that, or for various reasons, we could choose what we considered the market price?

Judge Taylor agreed in this manner:

> At the time the goods were allegedly possessed by the defendant, that is right.

Thus, during the jury's deliberations and at the crucial moment when it was focusing its attention on the value issue, the trial judge, by his response, gave an instruction which was as favorable to Lewis as the one he contends for here.

In these circumstances, the error, if any, in Judge Taylor's original charge was cured by the supplemental colloquy with the jury.[6]

Affirmed.

6. We find no merit in Lewis' contention that the district judge erred in failing to grant a one-week continuance of the trial so that he could summon a witness from Lerner Shops to testify as to the value of the returned dresses. Lewis who had been arraigned four weeks prior to trial made this request himself only moments before the jury was empaneled despite his representation by counsel. Lewis' attorney added that he "could see no reason why we should not proceed." In these circumstances, Judge Taylor did not abuse his discretion in declining to postpone the trial. See United States v. Houlihan, 332 F.2d 8, 15 (2d Cir.), cert. denied, 379 U.S. 828, 85 S.Ct. 56, 13 L. Ed.2d 37 (1964); United States v. Bentvena, 319 F.2d 916, 934-935 (2d Cir.), cert. denied sub nom. Ormento v. United States, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963).