460 F.2d 464
 UNITED STATES of America, Appellee,
v.
Frank TRAMONTANA, Appellant.
 No. 660, Docket 72-1071.
 United States Court of Appeals,
Second Circuit.
 Argued April 6, 1972.
Decided May 15, 1972.
 
 David G. Trager, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., and Paul B. Bergman, Asst. U. S. Atty., for the Eastern District of New York, on the brief), for appellee.
 Phylis Skloot Bamberger, The Legal Aid Society, New York City (Robert Kasanoff, New York City, on the brief), for appellant.
 Before CLARK, Associate Justice,* LUMBARD, Circuit Judge, and TYLER, District Judge.**
 LUMBARD, Circuit Judge:
 
 
 1
 Frank Tramontana appeals from a judgment of conviction, entered after a jury trial in the Eastern District, for embezzlement of mail in violation of 18 U.S.C. Sec. 1708. We affirm.
 
 
 2
 The issue on appeal is the admissibility of Tramontana's two confessions and contraband seized from the trunk of his car. The following facts were adduced at a pretrial suppression hearing.
 
 
 3
 On April 5, 1970, at about 8 p. m., New York City Patrolman Edward Cooper saw Tramontana talking to a young woman while both were standing next to a car parked at a bus stop. Patrolman Cooper approached the pair and noticed that the object held by Tramontana was a transistor radio. In response to the officer's inquiry, Tramontana said that he was "trying to sell some stuff" he had bought from "some guy." Patrolman Cooper looked in the already open trunk of Tramontana's car and observed several Columbia Record club packing boxes, some fifteen to twenty loose record albums, two more portable radios, and a United States mailman's hat. Patrolman Cooper asked Tramontana if the records were his, and Tramontana replied again that he had purchased them from "some guy" and was trying to sell them. Cooper then examined the packing cases more carefully and noticed that some of them were open and that the address plates had been torn off. He then told Tramontana that "he was going to be taken in for further investigation," advised him of his rights, and took him and the evidence to the 76th precinct house about a block away.
 
 
 4
 At the precinct Tramontana was frisked, searched, and questioned briefly by Detective Frederick Skinder, who advised him of his rights and asked if the records and radios were his. Tramontana answered that he had purchased the items, but had no bill of sale. At police request Postal Investigative Aide Sterling Brown came to the precinct, arriving at about 10:30 p. m. Tramontana was again advised of his rights and thereafter signed a brief statement admitting that he had taken some of the seized material while working as a mailman. He was released with instructions to report the following day to the General Post Office. He complied and at the post office the next day signed a more complete confession.
 
 
 5
 Patrolman Cooper testified that he had originally approached Tramontana to investigate a possible parking violation or a peddling without a license violation. He said that he had not arrested Tramontana for any violation whatsoever, but had simply taken him into custody on suspicion that something was amiss in regard to the records and radios. He believed that possession of stolen property might be involved, but that further investigation was necessary before such a determination could be made. Tramontana testified that he was told by the police several times that he was not under arrest. Cooper did say, however, that Tramontana was not free to leave, and that once in the precinct house he was placed in a detention cell while awaiting the arrival of the postal investigative aide.
 
 
 6
 Tramontana's position at the hearing was that there was no probable cause to arrest him, and that consequently his confessions and the evidence were inadmissible as the fruits of an illegal arrest. The government argued that Tramontana was never under arrest, that "they didn't have anything to arrest him for," and that "[T]here was no offense that the defendant was being held for. The defendant was asked to go to the station house for further investigation, which he did." Judge Travia agreed, but found that there was probable cause for the "detention" and apparently for that reason held the search and seizure lawful.
 
 
 7
 Substantially the same testimony was given by the police and postal officers at trial. Cooper again said that Tramontana had not been free to go, and that he would have taken Tramontana to the precinct house even if Tramontana had refused to accompany him. Detective Skinder testified that Tramontana had not been arrested, but was held for investigation and was not free to go because there was evidence of a possible crime. Tramontana's two confessions and the contraband seized from the trunk of his car were introduced into evidence over defense counsel's objections.
 
 
 8
 On appeal the government has abandoned its earlier position and the parties agree that an arrest took place when Patrolman Cooper took Tramontana to the precinct house. The government now argues that Patrolman Cooper's taking Tramontana into custody was an arrest for which there was probable cause. Tramontana continues to urge that probable cause was lacking. We think the government has the better argument.[1]
 
 
 9
 The courts are not bound, in their determination of whether probable cause existed, by the beliefs of the arresting officer and the Assistant United States Attorney at trial. Cf. Ralph v. Pepersack, 335 F.2d 128, 132-134 (4th Cir. 1964). The facts as they appeared to the arresting officer must "be judged against an objective standard," Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). This is necessary because if the subjective good faith of the officer that he had probable cause was sufficient to satisfy constitutional requirements "the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." Beck, supra at 97, 85 S.Ct. at 229. It is no less necessary when a mistake on the part of a police officer is arguably beneficial to the accused. The proper test is "whether the facts available to the officers at the moment of arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed." Beck, supra at 96, 85 S.Ct. at 228, quoting Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925).
 
 
 10
 When Patrolman Cooper arrested Tramontana by taking him to the precinct house, he did so with probable cause. Tramontana had responded to the initial inquiry with the information that he was trying to sell "some stuff" he had bought from "some guy." While this alone was certainly inadequate to establish probable cause-Cooper had no report of a theft or any previous acquaintance with Tramontana-and thus Cooper would not have been justified in searching Tramontana's car, Sibron v. New York, 392 U.S. 40, 67, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), the trunk of the car was open and Cooper's observation of the contraband was proper according to the "plain view" rule, Ker v. California, 374 U.S. 23, 42-43, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Harris v. United States, 390 U.S. 234, 236, 88 S. Ct. 992, 19 L.Ed.2d 1067 (1968). Cooper also noticed that some of the record cartons were open, and that the mailing labels had been torn off. He also saw a United States mailman's hat. Still Tramontana could provide no explanation other than that he was trying to sell the merchandise purchased from "some guy." He did not offer who the seller was, when the purchase had taken place, why the labels had been ripped off, or any other information that might allay Cooper's reasonable suspicion that something was amiss. At that point Cooper's suspicions "properly rose to the level of" probable cause, United States v. Lewis, 362 F.2d 759, 761 (2d Cir. 1966), regardless of his own legal characterization of his actions.
 
 
 11
 Tramontana's claim that the district judge improperly interjected his own questions of government witnesses, with the purpose of rehabilitating their testimony, does not make out a claim for reversible error. Upon a careful reading of the record, we are of the opinion that, while the trial judge's questioning indeed went beyond what seems to have been desirable, it was not so egregious as substantially to prejudice the appellant, especially in light of the overwhelming evidence against him.
 
 
 12
 Judgment affirmed.
 
 
 
 *
 United States Supreme Court, retired, sitting by designation
 
 
 **
 Sitting by designation
 
 
 [1]
 Inasmuch as it is no longer contested that an arrest occurred, we do not reach several interesting and important questions. Searches and seizures incident to a lawful arrest are constitutionally permissible, e. g., Ker v. California, 374 U.S. 23, 41, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Assuming a state officer has probable cause to arrest, however, may evidence he has seized be introduced in federal court when he does not arrest a defendant, but only detains him? And is an "arrest" to be here defined as a federal constitutional matter or as a matter of federal or state statutory or common law? Although numerous cases have said that the validity of an arrest made by a state officer depends on state law, e. g., United States v. Di Re, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210 (1948); United States v. Thomas, 396 F.2d 310, 313 (2d Cir. 1968); United States v. Thompson, 356 F.2d 216, 223 (2d Cir. 1965), cert. denied 384 U.S. 964, 86 S.Ct. 1591, 16 L.Ed.2d 675 (1966); Ralph v. Pepersack, 335 F. 2d 128, 135 (4th Cir. 1964); United States v. Viale, 312 F.2d 595, 600 (2d Cir.), cert. denied 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963); United States v. Vita, 294 F.2d 524, 530 n. 2 (2d Cir. 1961), cert. denied 369 U.S. 823, 82 S.Ct. 837, 7 L.Ed.2d 788 (1962), it would appear that, in addition, any federal requirements would have to be satisfied as well, e. g., Ralph v. Pepersack, supra; United States v. Thompson, supra. On facts similar to those of the instant case, many courts have held that an arrest has occurred, e. g., Seals v. United States, 117 U.S.App.D.C. 79, 325 F.2d 1006, 1008-09 (1963); United States v. Middleton, 344 F.2d 78, 81 (2d Cir. 1968); cf. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); United States v. Thompson, supra, at 222; United States v. Boston, 330 F.2d 937 (2d Cir.), cert. denied 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964); Coleman v. United States, 111 U.S.App.D.C. 210, 295 F.2d 555 (1961), cert. denied 369 U.S. 813, 82 S.Ct. 689, 7 L.Ed.2d 613 (1962), while as many (including those of the New York courts) have held to the contrary, e. g., United States v. Grandi, 424 F.2d 399, 401 (2d Cir. 1970); United States v. Thomas, supra, 356 F.2d at 313; United States v. Vita, supra; People v. Morales, 22 N.Y.2d 55, 290 N.Y.S. 2d 898 (1968); People v. Hoffman, 24 A.D.2d 497, 261 N.Y.S.2d 651 (1965); cf. Collins v. Beto, 348 F.2d 823, 836 (5th Cir. 1965) (Friendly, J., concurring); United States ex rel. Williams v. Fay, 323 F.2d 65, 71-72 (2d Cir. 1963) (Lumbard, C. J., concurring), cert. denied 381 U.S. 945, 85 S.Ct. 1788, 14 L. Ed.2d 709 (1965); Scarbeck v. United States, 115 U.S.App.D.C. 135, 317 F.2d 546, 563 (1962), cert. denied 374 U.S. 856, 83 S.Ct. 1897, 10 L.Ed.2d 1077 (1963); People v. Rivera, 14 N.Y.2d 441, 252 N.Y.S.2d 458, 201 N.E.2d 32 (1964), cert. denied 379 U.S. 978, 85 S. Ct. 679, 13 L.Ed.2d 568 (1965)
 Similarly, the determination of when an arrest takes place will guide federal courts in the application of 18 U.S.C. Sec. 3501 and the McNabb-Mallory rule. It is yet unclear when, if at all, federal courts will exclude evidence obtained by state officers in violation of these rules, and what if any difference it may make whether or not the state officers were arresting solely for a federal crime. Cf. Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829 (1942); Evans v. United States, 325 F.2d 596 (8th Cir. 1963), cert. denied 382 U.S. 881, 86 S.Ct. 170, 15 L.Ed.2d 121 (1965); United States v. Long, 323 F.2d 468 (6th Cir. 1963). These issues have not been presented to the court, and we leave their resolution to another day.