UNITED STATES of America,
Plaintiff-Appellee,

v.

Lorenzo SHELTON, Defendant-Appellant.

No. 77–5223.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 16, 1977.

Decided and Filed March 31, 1978.

Rehearing Denied May 2, 1978.

Carl Ziemba, Detroit, Mich., for defendant-appellant.

James K. Robinson, U. S. Atty., Peter J. Kelley, Detroit, Mich., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, EDWARDS and PECK, Circuit Judges.

EDWARDS, Circuit Judge.

Appellant was convicted in a jury trial before the United States District Court for the Eastern District of Michigan on an indictment charging violation of the Hobbs Act, 18 U.S.C. § 1951 (1976). He was sentenced to two years, with all but 90 days suspended.

His ably argued appeal presents two questions of some importance. First, was the constitutional prohibition against double jeopardy violated by the fact that appellant was first prosecuted unsuccessfully upon a charge of conspiring to violate the Hobbs Act and was subsequently prosecuted under the same Act for the substantive offense of extorting money "under col-

or of official right"? Second, does the language of the Hobbs Act (and Congressional intent in adopting it) serve to confer federal jurisdiction over the facts of this case?

Both questions require reference to the language of the Hobbs Act, which is Section 1951 of Chapter 95 (entitled "Racketeering") of the Criminal Code and which we reprint in full below.

> *Section 1951. Interference with commerce by threats or violence.*—(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.
>
> (b) As used in this section—
>
> (1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.
>
> (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear or under color of official right.
>
> (3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

> (c) This section shall not be construed to repeal, modify or affect section 17 of Title 15, sections 52, 101–115, 151–166 of Title 29 or sections 151–188 of Title 45.
>
> 18 U.S.C. § 1951 (1976).

## THE DOUBLE JEOPARDY QUESTION

█ The definition of crime contained in § 1951(a) above is phrased in the disjunctive. Thus in adopting this statute, Congress sought to make it a crime both to affect commerce by "robbery or extortion" or by "conspir[ing] so to do."

On May 27, 1976, the U. S. Attorney's office indicted appellant (and two other named persons) for the crime of conspiring to obstruct interstate commerce by extorting money from one of them under color of appellant's public office. The jury was sworn and the trial began. The evidence which was disclosed concerning the activities of the two other alleged coconspirators showed that one of them, Kettner, was involved in the conspiracy sought to be proved only up to a date in 1975. It also showed that during the alleged conspiracy the other named coconspirator, LaCoursiere, was cooperating with the Federal Bureau of Investigation. On these facts, at defendant's instance, the District Judge ruled that LaCoursiere could not be considered a coconspirator and that the proofs of conspiracy were limited to dates earlier than the dates of payment of money by LaCoursiere to appellant. These payments had been charged as overt acts in the conspiracy indictment.[1]

With these rulings confronting the government, the U. S. Attorney moved to dismiss the indictment and the court granted the motion. The second Hobbs Act indictment against appellant followed, charging the substantive offense of extortion under color of official right.

There is, of course, no question but that jeopardy attached in the first trial. Appellant's contention is that the Hobbs Act indictments and trials constituted double

---

1. They are also the principal grounds for the subsequent Hobbs Act extortion indictment.

jeopardy because the two indictments charged the same crime. We do not agree.

The fundamental rule concerning prosecution of two offenses was stated in *Blockburger v. United States*, where the Court said:

[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed.2d 306 (1932).

■ Generally, of course, conspiracy to commit a crime and the substantive crime itself may be charged as separate offenses. *Iannelli v. United States*, 420 U.S. 770, 777, 785 n.17, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975); *Pereira v. United States*, 347 U.S. 1, 11, 74 S.Ct. 358, 98 L.Ed. 435 (1954); *United States v. Mayes*, 512 F.2d 637, 652 (6th Cir.), *cert. denied*, 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975); *United States v. Bradley*, 421 F.2d 924, 927 (6th Cir. 1970).

In *Pereira v. United States, supra*, Chief Justice Warren, writing the opinion for the Court, said:

The petitioners alleged that their conviction on both the substantive counts and a conspiracy to commit the crimes charged in the substantive counts constitutes double jeopardy. It is settled law in this country that the commission of a substantive offense and a conspiracy to commit it are separate and distinct crimes, and a plea of double jeopardy is no defense to a conviction for both. See *Pinkerton v. United States*, 328 U.S. 640, 643–644, 66 S.Ct. 1180, 90 L.Ed. 1489, and cases cited therein. Only if the substantive offense and the conspiracy are identical does a conviction for both constitute double jeopardy.

*Pereira v. United States, supra*, 347 U.S. at 11, 74 S.Ct. at 364.

In a very recent case the Supreme Court recanvassed the double jeopardy problem and quoted approvingly from *Iannelli v. United States, supra* :

This test emphasizes the elements of the two crimes. "If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. . . ." *Iannelli v. United States*, 420 U.S. 770, 785 n.17, 95 S.Ct. 1284, 1294, 43 L.Ed.2d 616 (1975).

If two offenses are the same under this test for purposes of barring consecutive sentences at a single trial, they necessarily will be the same for purposes of barring successive prosecutions. See *In re Nielsen*, 131 U.S. 176, 187–188, 9 S.Ct. 672, 33 L.Ed. 118 (1889); cf. *Gavieres v. United States*, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911).

*Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

*See also Simpson v. United States*, —— U.S. ——, 98 S.Ct. 909, 912, 55 L.Ed.2d 70 (1978).

■ In our instant case the proofs required for the conspiracy indictment differed in two major aspects from those required to prove the substantive extortion indictment. The conspiracy charge required proof of Kettner's participation in the planning of the crime. The substantive extortion charge did not. On the other hand, the indictment for extorting money from LaCoursiere under color of official right required proof that money was extorted. No such testimony was legally required for the conspiracy indictment—although obviously the United States Attorney considered it a vital part of his contemplated argument to the jury.

We recognize that appellant contends, all of the above to the contrary notwithstanding, that he should still prevail on his double jeopardy argument under an "exception" stated in Wharton's Rule, 2 F. Wharton, Criminal Law 634 (7th ed. 1874). In *Iannelli v. United States, supra*, Justice Powell's opinion held that "Wharton's Rule does not rest on principles of double jeopardy." *Id.*, 420 U.S. at 782, 95 S.Ct. at 1292. On the contrary, the Court described the

rule as a judicial presumption to be applied only in the absence of contrary legislative intent, where the charges involve the same parties and rely upon the same facts, and where the consequences of the crimes affect only the parties themselves.

Recognizing these principles, the District Judge in this case said:

> Conspiracy to obstruct commerce by extortion of payments for the award of repair contracts in Detroit does not affect only the parties to the conspiracy; such a conspiracy, if proved, victimizes the people of Detroit, the many contractors who might have competed more successfully for repair contracts had the method for awarding them been lawful, and the contractor who paid a premium for the award of the contracts. Thus, there is no reason to except the Hobbs Act from the "historical difference between the conspiracy and its end." [*Iannelli v. United States, supra* at 779.]

We agree.

We also note that in our judgment Congress clearly intended to make conspiracy to extort and the substantive crime of extortion two different offenses, since both 18 U.S.C. §§ 1951(a) and 1951(b)(2) (1976) are phrased in the alternative.

## THE RACKETEERING ISSUE

■ Appellant also claims that "racketeering" is an element of any Hobbs Act crime, that "racketeering" was not charged in this indictment, and, hence, appellant's conviction is void. In this regard appellant relies upon this court's opinion in *United States v. Yokley*, 542 F.2d 300 (6th Cir. 1976), and the Ninth Circuit's majority opinion in *United States v. Culbert*, 548 F.2d 1355 (9th Cir.), *cert. granted*, 434 U.S. 816, 98 S.Ct. 53, 54 L.Ed.2d 71 (1977) (argued January 11, 1978). This precise issue phrased as broadly as appellant phrases it in this case is now before the United States Supreme Court awaiting decision, but the two cases upon which appellant relies in this regard are readily distinguishable from our present case. Both *Yokley* and *Culbert* involved extortion by use of force or violence. This court's opinion in *Yokley* and the Ninth Circuit's opinion in *Culbert* not only relied upon the absence of "racketeering" in the crimes there dealt with, but also regarded the prosecutions undertaken in the two cases as invasions of state criminal law sovereignty which were unintended by Congress.

The facts in our instant case are much closer to this court's decision in *United States v. Harding*, 563 F.2d 299 (6th Cir. 1977), *cert. denied*, —— U.S. ——, 98 S.Ct. 1235, 55 L.Ed.2d 762 (1978). In *Harding* the court distinguished *Yokley* by pointing to the common law history of extortion. At common law the crime of extortion was defined as the corrupt taking of money by a public official "under color of official right." It seems clear to us that Congress had this concept of "racketeering" specifically in mind in adopting the Hobbs Act. In that sense the crime of extortion of money "under color of official right" was another and more legalistic way of describing "racketeering." In this respect we note that in *United States v. Nardello*, 393 U.S. 286, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969), the Supreme Court in Chief Justice Warren's opinion discussed the meaning of extortion in the Hobbs Act and stated:

> At common law a public official who under color of office obtained the property of another not due either to the office or the official was guilty of extortion. In many States, however, the crime of extortion has been statutorily expanded to include acts by private individuals under which property is obtained by means of force, fear, or threats.

*United States v. Nardello, supra* at 289, 89 S.Ct. at 536 (footnote omitted).

*See also United States v. Staszcuk*, 517 F.2d 53, 60 (7th Cir. 1975) (en banc) (Stevens, J.) (adopting by reference the panel opinion at 502 F.2d 875, 878), *cert. denied*, 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975); *United States v. Crowley*, 504 F.2d 992, 994–95 (7th Cir. 1974); *United States v. Braasch*, 505 F.2d 139, 151–53 & n.8 (7th Cir. 1974), *cert. denied*, 421 U.S. 910, 95 S.Ct. 1562, 43 L.Ed.2d 775 (1975).

Under the circumstances recited above, we do not believe that either Supreme Court precedent or precedent in this court and the courts of appeals generally requires reversal of this case because the word "racketeering" was not employed in either the indictment or the charge.

### OTHER ISSUES

 Appellant also appears to contend that this was a victimless crime and that the money paid was freely rather than unwillingly paid and that on these grounds, appellant should be entitled to reversal.

As we have already pointed out in discussing the first issue, the District Judge found, and we agree, that the victims of this crime potentially include the people of Detroit who were deprived of the proper use of public funds, as well as the contractor who paid more than would otherwise be required, and the contractors who competed unsuccessfully.

If appellant's argument as to this issue is intended also to suggest that the crime should not be punished because it is de minimis, the answer must be that a little tolerated corruption can expand rapidly into great corruption.

Additionally, appellant claims that there was no unwilling victim. We note, however, that the District Judge gave a charge which specifically excluded the passive acceptance of a bribe as grounds for conviction:

Extortion under "color of official right" means that property was unlawfully obtained from another person by a public officer, under the color of his office, and the property so obtained was not due and owing to the public officer, nor was the property due and owing to the office he represented. This type of extortion by a public officer does not require proof of any specific threats or the use of fear. It is required, however, that the public official be the initiator or inducer of the obtaining of the money or property. It is this requirement of inducing or initiating by the action or inaction of the defendant that distinguishes this

crime from bribery. Before you can convict the defendant, you must believe beyond a reasonable doubt that he in some manner induced or initiated a transaction resulting in the payment of money to him as charged in the Indictment.

The jury's finding of guilt must be read as representing the jury's belief that appellant did induce or initiate the transaction as to which he was found guilty.

We have read the entire Appendix and find therein ample evidence from which the jury could properly have reached this conclusion.

Finding no other material issue presented and no prejudicial error in this record, we affirm the judgment of conviction.