**UNITED STATES of America,
Plaintiff, Appellee,**

**v.**

**Anthony F. PREVITE, Defendant,
Appellant.**

**Nos. 80–1444, 80–1608.**

United States Court of Appeals,
First Circuit.

Argued Jan. 7, 1981.

Decided May 7, 1981.

Jeanne Baker, Cambridge, Mass., with whom William J. Genego, Washington, D. C., and Baker & Fine, Cambridge, Mass., were on brief, for defendant, appellant.

Alan D. Rose, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for plaintiff, appellee.

Before COFFIN, Chief Judge, BOWNES and BREYER, Circuit Judges.

COFFIN, Chief Judge.

Anthony Previte appeals on numerous grounds his conviction on two counts of conspiracy to defraud the United States or to give or receive gratuities. His arguments may be classed in three general categories: challenges to the sufficiency of the indictment, attacks on the content and manner of the district judge's instructions to the jury, and a renewal of a motion for a new trial based on an alleged prosecutorial failure to disclose exculpatory information. Each of these categories in turn comprises a number of subsidiary arguments and issues, some of which require rather careful analysis. After setting forth the relevant facts, we address each of the defendant's challenges in turn. Finding no reversible error in any of the issues raised, we affirm both the judgment of conviction and the denial of the motion for a new trial.

## I

Defendant-appellant Anthony F. Previte ("Previte") was indicted on five counts of official misconduct by a grand jury in the District of Massachusetts. Each count charged wrongdoing by Previte in his capacity as Chief of the Portfolio Management Division of the Boston office of the United States Small Business Administration (the "SBA"). Counts I, II and III ("the Aver counts") related to alleged dealings with Peter R. Aver ("Aver"), for whom the SBA had twice guaranteed bank loans:

Count I charged that Previte had conspired with Aver both to defraud the United States, in violation of 18 U.S.C. § 371, and to commit violations of 18 U.S.C. § 201(f) and (g), proscribing the giving and receiving of gratuities by public officials, while Counts II and III each charged Previte with the receipt of separate $2500 bribes from Aver, in violation of 18 U.S.C. § 201(c). Counts IV and V ("the Pandy counts") related to alleged dealings with George R. Pandy ("Pandy"), who had obtained four SBA loan guarantees and one direct SBA loan; Count IV charged that Previte had conspired with Pandy to commit the same offenses charged in Count I, while Count V charged that Previte aided and abetted Pandy in the submission of false information to the SBA, in violation of 15 U.S.C. § 645 and 18 U.S.C. § 2. After a three-week jury trial, Previte was convicted on the two conspiracy counts, I and IV, and acquitted on the three substantive counts; he was sentenced to concurrent one-year prison terms on Counts I and IV. Previte subsequently filed a motion for a new trial based on an alleged failure of the government to disclose exculpatory evidence; the district court denied the motion, and Previte appeals from that denial along with his appeal from the judgment of conviction.

The evidence at trial, viewed in the light most favorable to the government, *United States v. Davis*, 623 F.2d 188, 195 (1st Cir. 1980), showed among other things the following, beginning with the evidence relevant to the Aver counts. Aver, who had learned that Previte had helped Aver's business partner with an earlier SBA loan in return for certain gratuities, approached Previte for his assistance in obtaining an SBA guarantee for a $100,000 loan Aver was then seeking from a bank. Previte assured Aver that he would push the guarantee through the SBA so long as Aver "took care" of him, and proposed several falsifications and omissions in Aver's application. After the application was submitted Previte told Aver he needed $2500, which Aver paid him; the application was approved shortly thereafter. Subsequently,

after the restaurant for which the loan was made had been burned by Aver for insurance purposes, Previte took steps to have the bank continue servicing the loan despite Aver's failure to make certain payments due on it. Aver then sought a second loan, for which Previte again recommended and approved various falsifications, and Aver paid Previte another $2500 prior to approval of the guarantee. Previte again took steps to prevent bank foreclosure on the second loan after the bank discovered that Aver had filed false information with his loan application. In addition to the two cash payments, Aver paid for numerous dinners for Previte during this period and arranged for free visits to massage parlors and other services. Finally, after the FBI began to investigate the matter, Aver became an informant and recorded a conversation in which Previte made highly incriminating statements.

With respect to the Pandy counts, the evidence showed a similar pattern. Previte approached Pandy shortly after Pandy had applied for an SBA loan guarantee, and offered to "take care of" Pandy's application. At Previte's suggestions, Pandy then paid for dinner and the services of a prostitute for Previte, and Previte assured Pandy that the application would be approved. In fact, however, the application was initially declined by another SBA official, but was subsequently approved after Previte intervened. Over the next three years, Previte and Pandy discussed Pandy's loan situation frequently; Previte assisted in a variety of ways with four other SBA applications submitted by Pandy totalling about $1,000,000; and Pandy paid for numerous dinners, car repairs and rentals, and massage parlor services totalling about $3600, usually at Previte's request. Their relationship ended at about the time Pandy's business closed.

The principal thrust of the defense case was to impeach the credibility of the government's principal witnesses, Aver and Pandy. The defense introduced evidence showing Aver's prior criminal record, and emphasized that both witnesses were testifying under a grant of immunity. In addition, defense counsel elicited testimony, primarily in cross-examination of government witnesses, as to the defendant's reputation for truthfulness and integrity; the nature and extent of this testimony is of significance with respect to one of the challenges to the jury instructions to be considered below.

## II

Previte challenges the indictment as unable to support his convictions in two respects, one addressing the relationship between the counts as stated on the face of the indictment and the other deriving from the particular pattern of convictions and acquittals returned by the jury. First, he argues that the conspiracy counts of the indictment, the only counts on which he was convicted, violated Wharton's Rule by charging him only with "conspiring to agree". Second, he contends that, because of the particular relationship between the facts alleged in the substantive counts and those alleged in the conspiracy counts, the jury's acquittals on the former serve as a matter of law as acquittals on the latter as well.

## A

Wharton's Rule is a historical, common law doctrine that prevents the state in a few limited instances from convicting any person of both a conspiracy and the substantive offense that is the conspiracy's objective. It applies when the substantive offense is of a sort that necessarily requires the active, or culpable, participation of the same two people for its successful completion. The leading American case, for example, prevented a prosecution for conspiracy to commit adultery brought after the state had failed to obtain a conviction for the substantive offense. *Shannon v. Commonwealth*, 14 Pa. 226 (1850).

The Supreme Court explained the rule in *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975), setting forth several principles of interpretation. First, the Court noted that ordinarily one can convict a defendant of both

**77**

conspiracy to commit a crime and the substantive crime itself. The old common law notion that the conspiracy "merged" into the substantive offense has been discarded in light of the fact that a criminal agreement poses dangers to society distinct from the dangers posed by simple commission of a crime. Wharton's Rule is, to some extent, a relic of the discredited merger doctrine and should be interpreted narrowly. Second, the Court made clear that the Rule applies only to those offenses that "*require* concerted criminal activity". (Emphasis in original.)[1] Thus, presumably, the Rule does not apply to robbery—even if a particular indictment charges a scheme that requires two robbers for its success—for the crime of robbery does not itself require two culpable participants (though it does require a robber and a victim).

■ Third, the Rule may not apply even to those crimes that fit within its technical requirements. For one thing, the Rule is a judicial presumption, serving only as an indication of legislative intent. It is subject to rebuttal by contrary indications. For another thing, the Court suggests that it may not apply outside the area of victimless crimes, for only where the direct consequences of the crime fall on the parties themselves are the added dangers that a conspiracy poses to society minimal. Finally, the Rule does not forbid charging both a conspiracy and the substantive offense, even when it applies. It merely forbids sentencing on both counts, "for the real problem is the avoidance of dual punishment." *Id.* at 786 n.18, 95 S.Ct. at 1294 n.18.

■ These principles make clear that Wharton's Rule does not apply to this case. The offense charged in the indictment is conspiracy to violate two separate statutory provisions: 18 U.S.C. § 201(f) and 18 U.S.C. § 201(g). The first of these provisions makes it a crime if a person "gives, offers, or promises" anything of value to a public official for performing official acts. The second makes it a crime if a public official "asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive" anything of value for performing official acts. The indictment charges a conspiracy to violate subsection (f) in that defendant and Aver conspired to have Aver "give, offer and promise" Previte things of value. It charges a conspiracy to violate subsection (g) in that defendant and Aver agreed that Previte would "seek and receive" things of value.[2] Wharton's Rule does not apply for the simple reason that neither the one, nor the other, of these statutes requires the culpable participation of two persons for its violation: to the contrary, each of them allows conviction in this instance of only *one* of the two persons involved.

1. Unfortunately, the statement of the Rule in the current edition of Wharton's treatise does not make clear that the participation of both persons must be "culpable" under the substantive statute. It states: "An agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission." 1 R. Anderson, *Wharton's Criminal Law and Procedure* § 89 at 191 (1957). Wharton's earlier statement of the Rule, however, makes clear that "culpable" participation is required. He states:

"When to the idea of an offense plurality of agents is logically necessary, conspiracy, which assumes the voluntary accession of a person to a crime of such a character that it is aggravated by a plurality of agents, cannot be maintained." 2 F. Wharton, *Criminal Law* § 1604 at 1862 (12th ed. 1932).

Similarly, *Iannelli*, interpreting the doctrine in light of its purposes, requires that the crime be one in which culpable participation by both actors is logically necessary for the crime's completion.

2. Appellant argues that the indictment charges a "conspiracy to agree" to receive a thing of value. But, the indictment does not allow that reading. It states that defendant "did ... conspire with Peter Aver ... to commit offenses, to wit, violations of Title 18, ... in that the defendant, ... did unlawfully agree that Peter Aver would ... give, offer and promise things of value to the defendant ...; and in that the defendant ... would ... seek and receive, for himself, things of value...." The word "agree" in the indictment would seem simply to repeat the words "did conspire". The indictment charges that Previte "conspired to violate the law in that he agreed with Aver to solicit and to receive things of value."

This interpretation of the statutes and Wharton's Rule has been followed consistently by courts in the analogous (and, from defendant's perspective, stronger) case of bribery. The gratuity offense alleged to be the object of the conspiracy provides that

> "[W]hoever, being a public official, former public official, or person selected to be a public official, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself for or because of any official act performed or to be performed by him." 18 U.S.C. § 201(g).

In *United States v. Holte*, 236 U.S. 140, 35 S.Ct. 271, 59 L.Ed. 504 (1914) (Holmes, J.), reversing a lower court ruling that had held a prosecution barred by Wharton's Rule, the Court observed that "a conspiracy with an officer or employee of the government or any other for an offense that only he could commit has been held for many years to fall within the conspiracy section". *Id.* at 145. In *Ex Parte O'Leary*, 53 F.2d 956 (7th Cir. 1931), the court was presented directly with "the proposition that a conspiracy to commit the crime of bribery by two persons, who are the alleged conspirators, fails if it be shown that the bribery has been completed", and held that "the decision in [*Holte*] disposes of the question contrary to the contention of appellants". *Id.* at 957.[3] The only modern case squarely on point is to the same effect. *United States v. Greenberg*, 223 F.Supp. 350 (S.D.N.Y.1963); *cf. United States v. Finazzo*, 407 F.Supp. 1127,

1130 (E.D.Mich.1975) (dictum) (suggesting that problem would be raised under this statute only by multiple sentencing).

We reach the same conclusion. We begin with the fact that the focus of a Wharton's Rule analysis after *Iannelli* must be on the statutory elements of the substantive offense involved rather than on the particular evidence offered to prove it in a specific trial—on, that is, whether it is possible to sustain a conviction under the offense charged on grounds that differ from those necessary to sustain a conviction on the conspiracy count. *See Iannelli v. United States, supra*, 420 U.S. at 785 n.17, 95 S.Ct. at 1293 n.17; *United States v. Shelton*, 573 F.2d 917, 919 (6th Cir. 1978); *United States v. Ohlson*, 552 F.2d 1347, 1349 (9th Cir. 1977). The answer to this question with respect to gratuity offenses in particular has been foreshadowed by *Burton v. United States*, 202 U.S. 344, 377, 26 S.Ct. 688, 697, 50 L.Ed. 1057 (1906), in which the Supreme Court faced a statute substantially identical to the one before us: the relevant section made it a crime for a federal official to "receive, or agree to receive, any compensation" for specified services. The Court held that the acts of receiving compensation on the one hand, and agreeing to receive it on the other, although arising out of the same transaction, constituted separate and distinct offenses for which a party could be separately prosecuted, convicted and sentenced. *Id.* at 377, 26 S.Ct. at 697. We had occasion to consider the Court's holding at length in a later case, and reiterated the logic of this distinction.[4] *Ekberg v. United*

---

**3.** The court went on to explain what it viewed as the rationale justifying the decision in *Holte*:

> "Appellants' argument necessarily assumes that the conspirators named in this indictment were both participants in the crime of accepting a bribe or in the crime of giving a bribe. Inasmuch as one section defines a crime, and restricts the offender to the recipient, and the other section restricts the offender to the giver, the contention is fallacious. In other words, applying the language of Justice Holmes in the *Holte* case, 'only the government employee could commit the act which was the object of the conspiracy.' There could therefore be a conspiracy be-

tween one not an officer and the said officer to commit the crime which the said officer alone could commit." *Id.*

**4.** We analyzed this element of the Court's opinion as follows:

> "[T]he Court pointed out that there might be an agreement to receive compensation without any compensation ever being in fact paid, and on the other hand compensation might be received for the services without any previous agreement. It was concluded that 'Congress intended to place its condemnation upon each distinct, separate part of every transaction coming within the mischiefs intended to be reached and remedied. Therefore an agreement to receive compensation

States, 167 F.2d 380, 385 (1st Cir. 1948); *see* Note, *Developments in the Law: Criminal Conspiracy*, 72 Harv.L.Rev. 920, 954–55 (1959).

We conclude in light of these precedents that a conviction on the substantive gratuity offenses charged as the object of the conspiracy to which this indictment refers could be sustained without an agreement, thus rendering the conspiracy indictment sufficient under *Iannelli. See United States v. Shelton, supra*, 573 F.2d at 919. Because a government employee could commit these substantive gratuity offenses without the criminally culpable participation of any other party—if he, for example, "asks" for a gratuity in violation of § 201(g) —the offenses do not *require* concert of action, as they must in order for the conspiracy count to violate Wharton's Rule. *See Iannelli v. United States, supra; United States v. Ohlson, supra; United States v. Cullen*, 305 F.Supp. 695 (E.D.Wis.1969).[5]

While this conclusion does indeed reflect a narrow reading of the Rule, we believe such a reading especially appropriate in this kind of case. Bribery offenses implicate broad social concerns, and have an impact far beyond that of the consensual, victim-

less offenses that lie at the heart of Wharton's Rule. *See Iannelli v. United States, supra*, 420 U.S. at 782–86, 95 S.Ct. at 1292–93; *United States v. Foster*, 566 F.2d 1045 (6th Cir. 1977); Note, *supra*, 72 Harv.L.Rev. at 954–55. Similarly, conspiracy to commit bribery might well be thought to raise the dangers of criminal agreement in a way that "conspiracy" to engage in such traditional Wharton's Rule offenses as duelling and incest cannot. Thus, the legislative intent might well be thought presumptively to include rather than exclude parallel conspiracy liability, a presumption which would become conclusive here in the absence of any affirmative indication of legislative intent to the contrary.[6]

Were there to be any doubt on this matter, the fact that most if not all of the principal harms to a defendant that Wharton's Rule is designed to prevent are absent in the posture of this appeal, strengthens the argument for not applying the Rule here. First, because Previte was acquitted on all substantive counts charged, he is in no danger of suffering double sentencing, a danger which has often been viewed as central to the Rule's purposes. *See, e. g., Ekberg v. United States, supra*, 167 F.2d at

was made an offense. So the receiving of compensation in violation of the statute, whether pursuant to a previous agreement or not, was made another and separate offense.'" *Ekberg v. United States, supra*, 167 F.2d 380, 385 (1st Cir. 1945).

**5.** This analysis, addressed to a Wharton's Rule attack, would not necessarily suffice to dispose of a double jeopardy challenge based on the "same evidence" test associated with *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1937), i. e., that a single act may constitute a violation of two distinct statutes only where "each provision requires proof of a fact which the other does not". Put another way, it is sufficient to sustain an indictment against a Wharton's Rule challenge to demonstrate that one of the offenses involved *may* contain an element that the other does not; it is necessary under *Blockburger* to show both that the first offense *must* contain some element that the other does not and in addition that the other offense contains some necessary element that the first does not as well.

No *Blockburger* type of challenge having been raised here, and there being no plain error, we pause only to suggest that problems will best be avoided if, in cases where the

prosecution desires to charge both bribery and a conspiracy to bribe or to give or receive gratuities (or, indeed, any substantive offense whose statutory definition includes both an act or an agreement, and a conspiracy to commit that offense or a different offense requiring proof of no additional elements), it drafts the substantive count so as to exclude any reference to an agreement.

**6.** Indeed, evidence of an intent to allow simultaneous conspiracy liability might be found in Congress' failure to foreclose such liability in the face of several factors suggesting its existence: first, that conspiracy liability had been imposed in numerous bribery cases, *see, e. g., Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Holte, supra*; second, that Congress had specifically included the phrase "or conspires to do so" in other statutes, *e. g.*, 18 U.S.C. § 1951; *see United States v. Shelton*, 573 F.2d 917, 919 (6th Cir. 1978); and third, that the Supreme Court in *Iannelli* had made plain its reluctance to find Wharton's Rule applicable to crimes outside its narrow traditional range.

385; *Freeman v. United States*, 146 F.2d 978, 980 (6th Cir. 1945); *United States v. Finazzo, supra*, 407 F.Supp. at 1130 (dictum); *cf. United States v. Wilson*, 420 U.S. 332, 344, 95 S.Ct. 1013, 1022, 43 L.Ed.2d 232 (1975) (double jeopardy problems implicated only by threat of either multiple punishment or successive prosecution). Similarly, there can be no danger, central to many limitations on conspiracy law, that an invalid conspiracy indictment might have contributed unfairly to a conviction on a substantive count. *See generally* Model Penal Code, Tent.Draft No. 1 (1953), Comments to § 204(3) at 20–23; Kadish and Paulsen, Criminal Law and its Processes 416–32 (3d ed. 1975). In addition, appellant was not even charged with the substantive gratuity offenses alleged to be the object of the conspiracies, thus eliminating the possibility that he was put to an increased risk of conviction by being charged twice for a single offense.

■ Finally, the fact that appellant first raises objections to his indictment on appeal has created two more hurdles. First, failure to object until after the verdict dictates that the indictment be construed liberally and not held invalid absent a showing of actual prejudice. *See Hagner v. United States*, 285 U.S. 427, 433, 52 S.Ct. 417, 419, 76 L.Ed. 861 (1932); *United States v. Gibson*, 513 F.2d 978, 979 (6th Cir. 1975); *United States v. Thompson*, 356 F.2d 216, 225–27 (2d Cir. 1965). Second, and even more critically, failure to preserve any objection to the jury verdict below results in a waiver of appellant's right to claim an impermissibly ambiguous verdict under *Yates v. United States*, 354 U.S. 298, 312 (1957). *See United States v. Moynagh*, 566 F.2d 799, 804 (1st Cir. 1977); *United States v. Natelli*, 527 F.2d 311, 327–28 (2d Cir. 1975). Appellant's contention with respect to Wharton's Rule necessarily rests on the ambiguous verdict rule, since each conspiracy count charged a conspiracy both to defraud the United States and to commit a gratuity offense, and, putting aside for the moment appellant's challenge to the district court's jury instructions, no contention is raised that the objective of defrauding the United States is inadequate to sustain appellant's conviction. Had objection to the potential ambiguity been preserved, we would be required to determine the adequacy of the bribery objective; but appellant concedes that he has not, and we accordingly review the verdict only for plain error. For all the reasons set forth above we find none, and we conclude that appellant's Wharton Rule challenge must fail.

## B

■ Previte's second challenge to his indictment asserts that the jury's acquittal on the substantive count serves as a matter of law as an acquittal on the conspiracy counts as well. Specifically, he argues that the acquittals serve as determinations that the overt acts alleged in the substantive counts were not committed, and that because those counts alleged the same key elements as the conspiracy counts such a determination requires acquittal on the latter as well.

We have some difficulty in understanding the precise theory underlying this challenge, since appellant in his briefs urges strenuously that he is not asserting either of the two related theories that seem to us the only relevant premises for such an argument. First, appellant properly eschews reliance on a claim of inconsistent jury verdicts, since it is settled law that as a general rule inconsistent jury verdicts do not provide grounds for acquittal. *See, e. g., Hamling v. United States*, 418 U.S. 87, 101, 94 S.Ct. 2887, 2899, 41 L.Ed.2d 590 (1974); *United States v. Martorano*, 557 F.2d 18 (1st Cir.), *reh. denied*, 561 F.2d 406 (1977), *cert. denied*, 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978). Second, however, appellant also disclaims reliance on the limited exception to this rule that we think provides the only possible basis for the claim advanced: the rule of collateral estoppel applicable where "an acquittal on one charge clearly constitutes a finding that a fact essential to the proof of another charge does not exist." *United States v. Bosch*, 584 F.2d 1113, 1118 (1st Cir. 1978); *see Ashe*

*v. Swenson*, 397 U.S. 436, 443–46, 90 S.Ct. 1189, 1194–95, 25 L.Ed.2d 469 (1970); 8A Moore's Federal Practice ¶ 29.08[1] at 29–47 to 29–50. We find this exception inapplicable to the facts of this case, simply because as noted above the alleged objects of the conspiracy (gratuities) are not the same offenses as those charged in the substantive counts (bribery).[7] Accordingly, we conclude that appellant's second challenge to the sufficiency of his indictment, like his first, must be rejected.

### III

■ Appellant's second set of arguments is directed to numerous and varied aspects of the district court's instructions to the jury. These may be classified in four general categories: instructions given with respect to essential elements of the conspiracy counts, particularly those relating to necessary mental states; instructions given with respect to burden of proof and reasonable doubt; comments made and instructions not given with respect to character testimony; and the form and manner in which the instructions were given.

We note at the outset appellant's acknowledgment that because no objection to any of these matters was raised at trial we must review them only for plain error. Fed.R.Crim.P. 52(b). As we said in *McMillen v. United States*, 386 F.2d 29, 35 (1st Cir. 1967), we will notice only errors "affecting substantial rights", Fed.R.Crim.P. 52(b), or which "seriously affect the fairness . . . of judicial proceedings", *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936), or which involve "exceptional" circumstances, *Polansky v. United States*, 332 F.2d 233, 235 (1st Cir. 1964). Although the putative errors form an intricate web, we conclude that none meets this high standard.

### A

■ Appellant asserts that the jury instructions given with respect to the alleged conspiracy omitted three essential elements of that offense: the mental state required for the substantive offense alleged to be the object of the conspiracy, the mental state required for the conspiracy itself, and the "public official" element necessary to any gratuity offense. We think the last two may be disposed of briefly. As to the latter, the court specifically instructed the jury that the unauthorized acts must have been committed "by a public official"; in light of appellant's complete failure at trial to dispute the fact that he was a public official and in light of his trial counsel's arguable concession of the point during the charging conference, this single explicit instruction is certainly sufficient to avoid plain error. As to the mental state required for conspiracy, appellant attempts to bring his case within the ambit of what is sometimes called the *Powell* doctrine, the principle that a conviction for conspiracy to commit a substantive offense which does not necessarily require any corrupt *mens rea* will be sustained only upon proof that the conspiracy itself was entered *into* with some criminal purpose. *See People v. Powell*, 63 N.Y. 88 (1875); Lafave & Scott, *Criminal Law* § 61 at 469 (1972); *cf. United States v. Bradley*, 455 F.2d 1181, 1188 (1st Cir. 1972), *aff'd*, 410 U.S. 605, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973) (vacating conviction on such grounds without reference to *Powell*). *But see United States v. Mack*, 112 F.2d 290, 292 (2d Cir. 1940) (L. Hand, J.) ("it is hard to see any reason for this [doctrine]"). This attempt fails to recognize that the *Powell* doctrine is limited to cases in which an alleged objective may be completely innocent and unobjectionable; ap-

---

**7.** Appellant's citation to the next page of the just-cited section of Moore's, 29–51, suggests an argument that the conspiracy conviction here is barred by the doctrine precluding prosecution of an offense where a defendant has been acquitted of a lesser-included offense. This doctrine is inapplicable here both because no lesser-included offenses are involved and because the rule operates to bar only subsequent prosecutions or double punishments, not multiple counts within a single indictment. *McMillen v. United States*, 386 F.2d 29, 37 (1st Cir. 1967); *Ekberg v. United States, supra*, 167 F.2d at 385; *United States v. Cullen, supra*, 305 F.Supp. at 698.

pellant concedes that the gratuity offenses alleged to be the object of the conspiracy in this case require guilty knowledge, thus rendering the doctrine wholly inapplicable. *United States v. Feola,* 420 U.S. 671, 692, 95 S.Ct. 1255, 1269, 43 L.Ed.2d 541 (1975).

■ The remaining element assertedly omitted from the jury charges, that of the mental state required for the substantive offense alleged to be the object of the conspiracy, requires a somewhat lengthier analysis. Initially, appellant relies on the principle that "a conviction [for conspiracy] cannot be sustained unless the Government establishes beyond a reasonable doubt that the defendant had the specific intent to violate the substantive statute". *United States v. Mora,* 598 F.2d 682, 683 (1st Cir. 1979); *see United States v. Feola, supra,* 420 U.S. at 686, 95 S.Ct. at 1264; *Ingram v. United States,* 360 U.S. 672, 678, 79 S.Ct. 1314, 1319, 3 L.Ed.2d 1503 (1959). We think this principle applicable here, and proceed to consider appellant's challenge.

The element said to have been omitted has two components: that the alleged payments be made for or because of an official act, and that the defendant receive the payment "with a certain guilty knowledge ... *i. e.,* with 'knowledge that the donor was paying him compensation for an official act' ". *United States v. Brewster,* 506 F.2d 62, 82 (D.C.Cir.1974), *quoting United States v. Brewster,* 408 U.S. 501, 527, 92 S.Ct. 2531, 2544, 33 L.Ed.2d 507 (1972); *cf. United States v. Seuss,* 474 F.2d 385, 389 (1st Cir.), *cert. denied,* 412 U.S. 928, 93 S.Ct. 2751, 37 L.Ed.2d 155 (1973) *(dictum)* (suggesting standard for donor's state of mind under gratuity statute).[8] The district court ad-

dressed this element most directly at one point in its charge when, advising the jury that this was a difficult distinction to grasp, it quoted the following language from what appellant acknowledges to be the leading case on the question, *United States v. Brewster, supra,* 506 F.2d at 82:

"We have laid emphasis under the bribery section on 'corruptly ... in return for being influenced' as defining the requisite intent, incorporating a concept of the bribe being the prime mover or producer of the official act. In contrast under the gratuity section, 'otherwise than as provided by law ... for or because of any official act' carries the concept of the official act being done anyway, but the payment only being made because of a specifically identified act, and with a certain guilty knowledge best defined by the Supreme Court itself, *i. e.,* 'with knowledge that the donor was paying him compensation for an official act....' "

Appellant recognizes this quotation as a correct statement of the law, but asserts that its use fails as a jury instruction in this case for several reasons: because it came in the context of instructions on substantive counts rather than the conspiracy counts, because the statement was intended as a statement of law to assist trial judges rather than as a jury charge, and because the judge's omission of ellipses and internal quotations made the statement difficult to follow. We need not comment on whether this would be the ideal manner of delivering these instructions; we hold only that the district court's reliance on the *Brewster* directive quoted above is sufficient to render the charge not plain error.[9]

8. The government points out that it is not required to prove that any such official act actually occurred, *see United States v. Irwin,* 354 F.2d 192, 196 (2d Cir. 1965), *cert. denied,* 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966), and argues in addition that in a gratuity prosecution, unlike a bribery prosecution, it need prove no causal relation to any "specific, identifiable act performed or to be performed by the official." *United States v. Niederberger,* 580 F.2d 63, 68–69 (3rd Cir.), *cert. denied,* 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978); *cf. Standefer v. United States,* 447 U.S. 10, 14

n.8, 100 S.Ct. 1999, 2003 n.8, 64 L.Ed.2d 689 (U.S. June 9, 1980) (approving parallel rule with respect to donor's intent). We need not decide whether this last point is correct or not, because of our conclusion that the instruction given in this case does not constitute plain error under either standard.

9. This conclusion is buttressed by both the judge's presentation of two hypothetical situations illustrative of a legal and an illegal gratuity, and his statement in connection with the conspiracy charge that the defendant must have received something "knowingly, willfully,

## B

■ Appellant's second set of alleged errors are directed to the court's instructions on reasonable doubt and the burden of proof. The latter is directed solely to a single phrase in which the court suggests that the defendant has an unspecified burden to carry; the phrase reflects an obviously unintentional substitution of the word "defendant" for the word "government". The instruction as a whole repeats no fewer than four times that the burden of proof rests on the government and includes at least one unequivocal assertion that the defendant bears no burden whatsoever. We think this argument an attempt to convert a molehill to a mountain, and we reject it. *See United States v. Caron,* 615 F.2d 920, 921 (1st Cir. 1980).

■ The district court's instructions as to reasonable doubt are somewhat more troubling. The court gave a variant of the "moral certainty" definition of reasonable doubt: "proof to a moral certainty", but also "not proof beyond all moral conviction." We have long expressed our reservations about a "moral certainty" instruction, and suggested that it need not be used. *See United States v. Ariza-Ibarra,* 605 F.2d 1216, 1228 (1st Cir. 1979); *Dunn v. Perrin,* 570 F.2d 21, 24 (1st Cir. 1978). However, in *United States v. Indorato,* 628 F.2d 711, 721 (1st Cir. 1980), we held that its use, while disfavored, was not reversible error and was "clearly" not plain error. We think the added gloss supplied in this instance may have served to compound the difficulty of understanding the term: the difference between a "moral certainty" and a "moral conviction" is perhaps a question for philosophers or linguists to consider, but it is surely not one jurors should have to divine. Nonetheless, while we would urge strongly that such a charge not be employed, we do not consider this added feature sufficient to distinguish this case from *Indorato,* and we hold the instruction not to be plain error.

## C

■ Appellant's third set of challenges is directed to two distinct aspects of the proceedings said to have undermined the defense theory of the case: comments made by the court with respect to a witness immunization issue, and the court's failure to give a charge on character testimony. The former occurred after appellant's trial counsel in closing characterized grants of immunity to two key prosecution witnesses as a "license to lie"; the court commented on this assertion at the start of its instructions, essentially disputing the "license to lie" characterization and instructing the jury not to consider it. Appellant seeks to find in these comments both undue assessment of witness' credibility and the evidence, and an improper appearance of partisanship. None of the court's statements, however, amounted to a clear evaluation of evidence, directed finding, or partisan intervention; and we find none of them to be such an abuse of the court's discretionary supervision of trial proceedings (*see, e. g., Herring v. New York,* 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975)) as to constitute plain error.

■ With respect to character testimony, it is undisputed that the district judge gave no instruction of any kind; the question in issue is whether appellant was entitled to such an instruction. Appellant submitted two requested instructions on character testimony, but could hardly be said to have emphasized such testimony during trial. While this factor was probed on cross-examination of some prosecution witnesses, only one witness testified directly to appellant's general reputation for honesty and good character; three other previously indicated character witnesses were not called; and defense counsel made very slight reference to this factor in closing. Again, emphasizing the high standard of review applicable in the absence of any objection to the

and unlawfully". While neither of these factors might be adequate standing alone, our view of them standing together with the quotation from *Brewster* leads us to reject as well

appellant's apparently independent assertion that the jury charges as a whole were so confusing and misleading as to deprive him of a fair trial.

omitted charge by defense counsel, we conclude that the omission does not constitute plain error.

## D

■ Appellant's final pair of criticisms of the district court's jury instructions relate not to their content but to their form: the use of a tape recorder to deliver a standardized reasonable-doubt instruction, and the use in several ways of slide-projector transparencies. The first we find relatively untroubling, since we see no clear reason to believe that a pre-recorded instruction is any less effective than a "live" statement. Arguments can be made, of course, that such an appearance of routinization unduly downplays the significance of the instruction. But steps can be taken to mitigate or entirely overcome that danger, two of which the district court utilized here: playing the tape twice, at the start of trial as well as alongside other instructions, and stressing its importance to the jury before playing it. When such steps are taken, a tape recording may provide the benefits of added precision and clarity without resulting in any loss of attentiveness. In any event, we decide for the present only that the use of the recording in this case was not plain error. *See United States v. Braverman*, 522 F.2d 218, 224 (7th Cir.), *cert. denied*, 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975).

■ The second matter gives us somewhat greater pause. The court used slide-projector transparencies to "illustrate" its instructions, projecting them onto the wall opposite the jury during the charges and sending some but not all of them into the jury room. Again we see no evil necessarily inherent in the use of such technology to enhance the effectiveness of communica-

tion, and indeed can readily imagine that such measures might well help a jury understand its duties with even greater clarity. *See generally* Higginbotham, Helping the Jury Understand, 6 Litigation # 4 at 5–6 (1980). For the same reason, we are not now prepared to hold that it is error *per se* to allow a jury to take such illustrative materials into the jury room, just as other courts have held submission of a written set of instructions to the jury to be within the district court's discretion. *See, e. g., United States v. Clavey*, 565 F.2d 111 (7th Cir. 1977); *United States v. Blane*, 375 F.2d 249 (6th Cir. 1967), *cert. denied*, 389 U.S. 825, 88 S.Ct. 41, 19 L.Ed.2d 503 (1976). Indeed, we think this aid properly employed could well enhance juror comprehension and rationality, certainly the principal if not the sole criteria by which such measures must be evaluated.[10] The choice of procedures to be used in instructing a jury is committed in the first instance to the sound discretion of the trial judge; where we have no clear sense that a particular practice is conducive to confusion rather than to reason and clarity, we will not prohibit it. *See United States v. Braverman, supra*, Devitt and Blackmar, Federal Jury Practice: Instructions § 8.05 (3d ed. 1977).

At the same time, however, such innovative tools must be used with great care and precision because they can be so powerful. The delivery of a misleading or incomplete instruction in a technologically-enhanced form may serve to magnify its ill effects in both significant and uncertain respects; submission of that error to the jury during its deliberations could only further compound such problems. As a result, judges who undertake to implement such measures must be particularly careful to frame their

---

10. We note that this procedure is even more desirable in several significant respects than the generally approved practice of allowing jurors to take their own notes during trial and then bring those notes into the jury room. *See, e. g., United States v. Braverman, supra; United States v. Marquez*, 449 F.2d 89, 93 (2d Cir. 1971), *cert. denied*, 405 U.S. 963, 92 S.Ct. 1167, 31 L.Ed.2d 239 (1972); *United States v. Pollack*, 433 F.2d 967 (5th Cir. 1970). First, of course, the content of the material is deliberately selected by the judge rather than left to the whim of individual jurors. Second, that content is publicly known and available to both parties and appellate courts for review. Finally, the material summarizes guiding principles of law rather than selectively assessing or interpreting evidence. Our opinion, of course, addresses only the practice used in this case.

substantive standards with precision, and we will scrutinize their use in a particular case with care.

Mindful of this high standard, we are impelled to note our agreement with appellant that certain features of the slide transparencies used in this case had some potential to mislead the jury, more by what they omitted than by what they contained. To cite perhaps the two most serious examples, the illustration outlining the guiding principles of jury deliberations made no mention of the burden of proof or the reasonable doubt standard, while the slide summarizing the elements of the conspiracy counts included no specific reference to the "for or because of" element of a gratuity offense discussed in Part III A, *supra*. These omissions are significant, and their significance is enhanced by the trial judge's statement—entirely proper where a summary is fully accurate—that the elements summarized represented the principal contentions of the case.

Yet, as we have noted, the court's oral instructions were accurate and complete with respect to each element omitted from the transparencies. Taking the jury charge as a whole, *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *Harris v. United States*, 367 F.2d 633 (1st Cir. 1966), *cert. denied*, 386 U.S. 915, 87 S.Ct. 862, 17 L.Ed.2d 787 (1967), we are not certain whether such omissions would constitute reversible error even. if raised at trial. But no objection to the use of the transparencies having been raised at trial, and defense counsel instead having indicated affirmative approval of their use, we hold only that no plain error occurred in this case.

## IV

█ Appellant's final argument is that the district court erred in denying his motion for a new trial, a motion based on two newly discovered pieces of allegedly exculpatory information and an asserted government failure to disclose these items promptly upon learning of them.

In determining whether the newly discovered evidence requires a new trial, we assume *arguendo* that appellant's characterization of the standard—that a new trial should be ordered where newly discovered evidence "might have affected the outcome of the trial"—is the correct one on the facts of this case, for we are convinced no new trial was called for here under any version of the applicable standard. *See United States v. Agurs*, 427 U.S. 97, 111–14, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1976); *United States v. Imbruglia*, 617 F.2d 1, 5 n.9 (1st Cir. 1980). First, we note that each of the two pieces of evidence in question related to the same facet of the defense case: the attempt to discredit one of the two key government witnesses, Peter Aver. Specifically, each suggested some recent illegal activity on Aver's part: in one case an allegation that at worst could be construed as the theft of a ring, and in the other an indication of embezzlement. But, as the district court emphasized in denying the motion, the defense had introduced extensive evidence at trial attacking Aver's credibility, specifically including uncontroverted evidence of numerous past felony convictions. Appellant now attempts to characterize the new evidence as not merely cumulative, arguing that they demonstrated both a current habit of dishonesty and a specific, ongoing reason to curry favor with the government during trial. While these distinctions may be defensible, we conclude that in the face of the overwhelming impeachment evidence presented they are too slight to meet the *Agurs* standard.

Finally, appellant asserts that the government failed to disclose the above items of information promptly upon obtaining them, in violation of its obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *see United States v. Pollack*, 534 F.2d 964, 973 (D.C. Cir.), *cert. denied*, 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1976). Certain important facts relevant to this claim are unclear from the record, but we find no evidence whatsoever to support appellant's suggestion that the government engaged in a deliberate policy of concealment. To the contrary,

and without describing the underlying facts in detail, we are content to accept the district court's explicit finding that the government did not seek to conceal either episode. In addition, appellant has demonstrated no specific prejudice to his ability to prepare or conduct his defense resulting from the alleged misconduct.

Accordingly, we reject appellant's contention that he is entitled to a new trial.

### V

In closing, we note that appellant has submerged in a footnote an oblique claim that he was denied effective assistance of counsel at trial. We do not consider this issue to have been directly presented to us, and nothing in this opinion should be taken to express any view whatsoever on such a claim.

*Affirmed.*