*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

### UNITED STATES
Appellee

**v.**

### Malcolm R. TURNER, Specialist
United States Army, Appellant

### No. 19-0158
Crim. App. No. 20160131

Argued November 6, 2019—Decided March 25, 2020

Military Judge: Matthew A. Calarco

For Appellant: *Captain Zachary A. Gray* (argued); *Colonel Elizabeth G. Marotta, Lieutenant Colonel Tiffany D. Pond*, and *Jonathan F. Potter*, Esq. (on brief); *Major Todd W. Simpson.*

For Appellee: *Captain Rene Tristan de Vega* (argued); *Colonel Steven P. Haight, Lieutenant Colonel Wayne H. Williams*, and *Major Hannah E. Kaufman* (on brief); *Major Marc B. Sawyer* and *Captain Meredith M. Picard.*

Judge OHLSON delivered the opinion of the Court, in which Chief Judge STUCKY, and Judges RYAN and SPARKS, joined. Judge MAGGS filed a separate dissenting opinion.

————————

Judge OHLSON delivered the opinion of the Court.

A panel composed of officer and enlisted members sitting as a general court-martial convicted Appellant, contrary to his pleas, of attempted killing with premeditation, conspiracy to commit premeditated murder, maiming, and obstruction of justice, in violation of Articles 80, 81, 124, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 881, 924, and 934 (2012). The panel sentenced Appellant to be confined for life without eligibility for parole, to be reduced to the grade of E-1, to forfeit all pay and allowances, and to be dishonorably discharged from the service. The convening authority approved the sentence and gave Appellant 599 days of confinement credit against his sentence.

On appeal, the United States Army Court of Criminal Appeals (CCA) dismissed Specification 1 of Charge IV (obstruction of justice in violation of Article 134, UCMJ), and conditionally dismissed the sole specification of Charge II (maiming, in violation of Article 124, UCMJ). *United States v. Turner*, No. ARMY 20160131, 2018 CCA LEXIS 593, at *32, 2018 WL 6287965, at *11 (A. Ct. Crim. App. Nov. 30, 2018) (unpublished). However, the CCA affirmed the remaining findings and sentence following a sentence reassessment. *Id.* at *32–33, 2018 WL 6287965, at *11.

Appellant now argues before this Court that the Specification of Charge I, which alleged that Appellant "attempt[ed] to kill with premeditation Specialist [C.S.G.] by means of shooting her with a loaded firearm," fails to state an offense because it makes no reference to the fact that this act was unlawful. Accordingly, Appellant seeks dismissal of the charge and specification. For the reasons cited below, however, we affirm Appellant's conviction.

## FACTUAL BACKGROUND

In 2012, Appellant and the victim, Specialist CSG, served together in Korea. *Turner*, 2018 CCA LEXIS 593, at *3, 2018 WL 6287965, at *1. They developed a sexual relationship and the victim soon became pregnant with Appellant's child. *Id.*, 2018 WL 6287965, at *1. The victim learned she was pregnant shortly after she discovered that Appellant was married. *Id.*, 2018 WL 6287965, at *1.

Soon thereafter, the victim was assigned to Fort Campbell, Kentucky, and Appellant was assigned to Fort Carson, Colorado. *Id.*, 2018 WL 6287965, at *2. The two rarely communicated until the victim filed a claim against Appellant for child support. *Id.*, 2018 WL 6287965, at *2. Appellant agreed to pay $200 a month, but then only made one payment of $100. *Id.*, 2018 WL 6287965, at *2. Appellant's wife eventually discovered that Appellant was the father of the victim's child and that the victim was seeking child support. *Id.* at *3–4, 2018 WL 6287965, at *2.

On January 1, 2015, Appellant and his wife arrived unannounced at the victim's apartment in Tennessee after driving there from Colorado. *Id.* at *5, 2018 WL 6287965, at *2. Once inside they confronted the victim about her request

2

for child support and they leveled spurious accusations against her which the victim heatedly denied. *Id*. at *5–6, 2018 WL 6287965, at *2–3. After a short time, Appellant's wife said to Appellant, " 'Well, the choice is up to you. What are you going to do about it?' " *Id*. at *6, 2018 WL 6287965, at *3. Appellant turned to the victim and said, " 'You think you're bad, huh? You think you're bad?' " *Id*., 2018 WL 6287965, at *3. Appellant then proceeded to pull out a handgun and shoot the victim from less than ten feet away with three .40 caliber hollow point bullets, hitting her in the arm, back, and head. *Id*. at *6–7, 2018 WL 6287965, at *2–3. Miraculously, the victim survived and identified her assailant to law enforcement officials. *Id*. at *7–8, 2018 WL 6287965, at *3. Appellant subsequently was charged with multiple offenses related to the incident.

One of the charges and specifications with which Appellant was charged reads as follows:

> CHARGE I: Violation of the UCMJ, Article 80.
>
> Specification: In that Specialist Malcolm R. Turner, U.S. Army, did, at or near Clarksville, Tennessee, on or about 1 January 2015, attempt to kill with premeditation Specialist [C.S.G.] by means of shooting her with a loaded firearm, causing grievous bodily harm.

At the court-martial, the panel convicted Appellant of this charge and specification, as well as several others. After the guilty verdicts were announced, however, Appellant moved to dismiss Charge I and its specification on the ground that it failed to state an offense. Specifically, Appellant argued that because the Government used the term "kill" rather than the term "unlawfully kill" or "murder," the charge and specification failed to allege that Appellant's act was unlawful and "[u]lawfulness is an element of this offense that must be proven [by the Government] beyond a reasonable doubt" in order for the conviction to stand.

The military judge denied the defense motion and the CCA affirmed. *Turner*, 2018 CCA LEXIS 593, at *32, 2018 WL 6287965, at *11. This Court then granted the following issue:

> Whether the Specification of Charge I alleging an attempted killing fails to state an offense because it

does not explicitly, or by necessary implication,
allege the attempted killing was unlawful.

## APPLICABLE LAW

The Sixth Amendment provides that an accused shall "be informed of the nature and cause of the accusation" against him. U.S. Const. amend. VI. Further, the Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law," and no person shall be "subject for the same offence to be twice put in jeopardy." U.S. Const. amend V. Thus, when an accused servicemember is charged with an offense at court-martial, each specification will be found constitutionally sufficient only if it alleges, "either expressly or by necessary implication," "every element" of the offense, "so as to give the accused notice [of the charge against which he must defend] and protect him against double jeopardy." *United States v. Dear*, 40 M.J. 196, 197 (C.M.A. 1994) (internal quotation marks omitted) (quoting Rule for Courts-Martial (R.C.M.) 307(c)(3)).

The lens through which this Court evaluates the sufficiency of a specification differs depending on when counsel first raised the issue. "[W]hen [a] charge and specification are first challenged *at trial*, we read the wording . . . narrowly and will only adopt interpretations that hew closely to the plain text." *United States v. Fosler*, 70 M.J. 225, 230 (C.A.A.F. 2011) (emphasis added). Hewing closely to the plain text means we will consider only the language contained in the specification when deciding whether it properly states the offense in question. *See United States v. Sutton*, 68 M.J. 455 (C.A.A.F. 2010). However, "[a] flawed specification first challenged *after trial* . . . is viewed with greater tolerance than one which was attacked before findings and sentence." *United States v. Watkins*, 21 M.J. 208, 209 (C.M.A. 1986) (emphasis added). Under the latter scenario, the specification will be viewed with "maximum liberality." *United States v. Bryant*, 30 M.J. 72, 73 (C.M.A. 1990).

If a specification fails to state an offense, the appropriate remedy is dismissal of that specification unless the Government can demonstrate that this constitutional error was harmless beyond a reasonable doubt. *United States v. Humphries*, 71 M.J. 209, 213 n.5 (C.A.A.F. 2012). The question of

whether a specification fails to state an offense is a question of law which this Court reviews de novo. *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F. 2006) (citing *Dear*, 40 M.J. at 197).

## ANALYSIS

This case underscores the peril that lies in wait for any government attorney[1] who, when drafting charges, fails to meticulously follow the language contained in the UCMJ sample specifications.[2]

The Government in the instant case sought to charge Appellant with the offense of attempted premeditated murder. One of the elements of the completed offense of premeditated murder under Article 118, UCMJ, 10 U.S.C. § 918, is that "the killing was *unlawful*." *Manual for Courts-Martial, United States* pt. IV, para. 43.b.(1)(c) (2016 ed.) (*MCM*) (emphasis added).

The sample specification for "Attempts" under Article 80, UCMJ, reads as follows:

> In that ____ (personal jurisdiction data) did, (at/on board—location) (subject-matter jurisdiction data, if required), on or about ___ 20__, attempt to (*describe offense with sufficient detail to include expressly or by necessary implication every element*).

---

[1] We note, of course, that trial counsel are not the only persons responsible for ensuring that charges properly state an offense. The attorney who drafts the charges (if different from the trial counsel), the preliminary hearing officer (whose duty it is "to consider the form of the charge(s))," R.C.M. 405(a)), the chief of criminal justice, and the general court-martial staff judge advocate who advises the commander to refer the charges to trial also are obligated to ensure that every element is properly charged in each charge and specification.

[2] The United States Court of Appeals for the Fourth Circuit has made a similar observation but in a far blunter manner: "It is beyond . . . understanding that a [prosecutor] would undertake to [draft a charge] without having before him the statute which defines the offense, or, having the statute before him could be so careless as to omit allegations meeting the statutory definition of one of the essential elements of the crime." *United States v. Hooker*, 841 F.2d 1225, 1232 (4th Cir. 1988) (citation omitted).

5

*MCM* pt. IV, para. 4.f. (emphasis added). Consistent with this mandate to "include expressly or by necessary implication every element" of the offense, in *United States v. Norwood*, this Court held that although "in order to state the elements of an inchoate offense under Articles 80 and 81, UCMJ, a specification is not required to expressly allege each element of the predicate offense," "sufficient specificity is required so that an accused is aware of the nature of the underlying target or predicate offense." 71 M.J. 204, 205, 207 (C.A.A.F. 2012) (citing *Bryant*, 30 M.J. 72; *United States v. Resendiz-Ponce*, 549 U.S. 102 (2007); *Wong Tai v. United States*, 273 U.S. 77 (1927)).

In the instant case, the charge sheet reads as follows:

> CHARGE I: Violation of the UCMJ, Article 80.
>
> Specification: In that Specialist Malcolm R. Turner, U.S. Army, did, at or near Clarksville, Tennessee, on or about 1 January 2015, attempt to kill with premeditation Specialist [C.S.G.] by means of shooting her with a loaded firearm, causing grievous bodily harm.

As can be seen, this specification fails to explicitly allege that the attempted killing was "unlawful." Because this element of the completed offense of premeditated murder was not alleged "expressly," we must determine whether it was alleged by "necessary implication" such that Appellant would have been "aware of the nature of the underlying target or predicate offense." *Norwood*, 71 M.J. at 207.[3]

---

[3] The resolution of this issue would have been much more straightforward if the Government had cited "Article 118, UCMJ" in the text of the charge and specification. If it had done so, "by necessary implication" all of the elements of premeditated murder under Article 118—which includes the element that the killing was "unlawful"—would have been incorporated into the attempt offense. *See Resendiz-Ponce*, 549 U.S. at 108 (holding that an indictment for an attempt offense that cites the relevant criminal statute for the completed offense and notes the time and place of the defendant's criminal behavior sufficiently states an offense); *Bryant*, 30 M.J. at 74 (holding that a conspiracy charge that "specifically refers to the statute on which the object offense is based" sufficiently stated an offense under the UCMJ (internal quotation marks omitted) (citation omitted)). Similarly, if the Government

Before we reach this question, however, we first must determine what analytical standard controls our review of this specification.

In *Watkins,* a specification alleging that the accused was absent without leave (AWOL) failed to explicitly state that the seaman's absence was "without authority," which is one of the elements of the offense. 21 M.J. at 209. The defense raised this issue for the first time on appeal. *Id.* The *Watkins* Court stated that although a specification must aver all the elements of an offense at least by fair implication:

> A flawed specification first challenged after trial . . . is viewed with greater tolerance than one which was attacked before findings and sentence. Although failure of a specification to state an offense is a fundamental defect which can be raised at any time, we choose to follow the rule of most federal courts of liberally construing specifications in favor of validity when they are challenged for the first time on appeal.

*Id.* (footnotes omitted) (citations omitted).

The key takeaway from this passage may be summarized as follows: Although a claim that a specification fails to state an offense may be made "at any time," if the claim is first raised "after trial" then the deficient specification will be viewed with "greater tolerance" and will be "liberally constru[ed]" in favor of validity.[4] However, two important questions inevitably flow from this holding: (a) What is meant by

had used the term "murder," "unlawfully" would have been incorporated into the attempt offense by necessary implication because a "murder" only occurs when "[a]ny person subject to this chapter . . . , without justification or excuse, *unlawfully* kills a human being." Article 118, UCMJ (emphasis added).

[4] This approach is consistent with R.C.M. 905(e), which authorizes the defense to raise an objection to a specification's failure to allege an offense at any time, including after "the court-martial is adjourned." Thus, it is the rule that sets forth when an objection is *timely* for the purposes of waiver, but it is our case law that sets forth the proper *standard* for determining whether a timely motion is *meritorious*.

the phrase "after trial"?;[5] and (b) What does it mean to view a specification with "greater tolerance" and to "liberally construe" that specification?

In regard to the first question, Appellant argues that the phrases "after trial" and "on appeal" are synonymous. In other words, Appellant contends that if an accused raises a failure to state an offense claim at any point before the court-martial adjourns, then the trial and appellate courts must "hew closely to the plain text" of the challenged specification when deciding whether it is fatally defective. *Fosler*, 70 M.J. at 230.

The *Watkins* opinion indicates, however, that Appellant is mistaken. In actuality, the line of demarcation that separates the "trial" stage of a court-martial and the "after trial" stage of a court-martial is the moment of time "*before findings and sentence.*" *Watkins*, 21 M.J. at 209 (emphasis added).[6] Thus, as soon as the finder of fact announces a guilty verdict regarding the facially deficient specification, the trial has ended, and the "liberal construction" and "greater tolerance" standards apply. *Id.*; *Bryant*, 30 M.J. at 75.

This conclusion can be deduced not only from the plain language of the first sentence of the passage cited above where the opinion explicitly refers to the import of challenging the specification "*before* findings and sentence," but also from the *Watkins* Court's citation to authority. *Watkins*, 21 M.J. at 209 & n.2 (emphasis added). Specifically, the *Watkins* Court favorably cited to several cases from our sister federal circuit courts of appeals, making clear that "before findings and sentence" is actually synonymous with "before the verdict."

---

[5] This temporal distinction is critical to answering the granted issue because Appellant raised his objection *after* findings but *before* the adjournment of his court-martial.

[6] It is important to note that not only in the *Watkins* case but also in other relevant opinions, this Court has consistently used the phrase "at trial" rather than the phrase "at the court-martial." *See, e.g.*, *Humphries*, 71 M.J. at 211–12; *Fosler*, 70 M.J. at 230–31; *Bryant*, 30 M.J. at 73–75. The term "court-martial" has a specialized, well-defined meaning in the military. A court-martial is not over until it is, in fact, adjourned, and adjournment occurs after the sentencing phase of the proceeding.

The *Watkins* Court cited *United States v. Previte*, in which the United States Court of Appeals for the First Circuit held, "[F]ailure to object until *after the verdict* dictates that the indictment be construed liberally." 648 F.2d 73, 80 (1st Cir. 1981) (emphasis added). Similarly, the *Watkins* Court cited to *United States v. Pheaster*, in which the United States Court of Appeals for the Ninth Circuit explained that the liberal construction standard applies "when an indictment is not challenged *before the verdict*." 544 F.2d 353, 361 (9th Cir. 1976) (emphasis added). Finally, the *Watkins* Court cited *United States v. Hart*, in which the United States Court of Appeals for the Sixth Circuit held as follows: "[U]nless the defendant can show prejudice, a conviction will not be reversed where the indictment is challenged only *after conviction* unless the indictment cannot within reason be construed to charge a crime." 640 F.2d 856, 857–58 (6th Cir. 1981) (emphasis added).

The federal circuit courts' distinction between "before conviction" and "before verdict," versus "after conviction" and "after verdict" is significant. In the civilian federal court system there almost always is a considerable lapse of time between when the government obtains a verdict convicting a defendant, and when the defendant's sentencing occurs (and, of course, when an appeal is filed). Thus, the temporal distinction referenced by several other federal circuit courts is a bright line; in order for a defendant to receive the benefit of a more favorable analytical standard, the defendant must raise a claim that the indictment failed to state an offense *before* he is convicted.[7] The *Watkins* Court clearly chose to adopt this approach—which, in the military context, means before findings are announced—and we hold that this analysis serves as binding precedent here.

---

[7] This temporal distinction removes any incentive for trial defense counsel to wait until the verdict is announced before playing the "failure to state an offense" card. Indeed, the Ninth Circuit noted as much when it explained the rationale behind the rule in *Pheaster*: "Such a long delay in raising the issue suggests a purely tactical motivation of incorporating a convenient ground of appeal in the event the jury verdict went against the defendants." 544 F.2d at 361.

Accordingly, because Appellant in the instant case waited until after the guilty verdict was handed down to raise his claim that the specification failed to adequately allege each element of the charged offense, he is not entitled to have this Court "only adopt [those] interpretations [of the specification] that hew closely to the plain text." *Fosler*, 70 M.J. at 230. Rather, this Court will apply the analytical standard articulated in *Watkins* that is more favorable to the Government.

In terms of the second issue—what it means to "liberally construe[]" a specification in favor of validity and to view it with "greater tolerance"—the *Watkins* precedent again provides guidance. To begin with, the opinion refers to "viewing post-trial challenges with *maximum* liberality." *Watkins*, 21 M.J. at 210 (emphasis added). Further, the *Watkins* Court favorably cited the United States Court of Appeals for the Second Circuit case of *United States v. Thompson*, 356 F.2d 216 (2d Cir. 1965), which states that when a failure to state an offense claim is "first raised after trial," the claim will fail "absent a clear showing of substantial prejudice to the accused—such as a showing that the indictment is 'so obviously defective that by no reasonable construction can it be said to charge the offense for which conviction was had.'" *Id.* at 226 (citations omitted). As explained below, under these analytical standards of review Appellant's claim must fail.

First, when viewed with "maximum liberality," it is a "reasonable construction" of the phrase "did . . . attempt to kill with premeditation Specialist [C.S.G.] by means of shooting her with a loaded firearm, causing grievous bodily harm," that Appellant was being charged with the offense of attempted premeditated *murder* (i.e., an *unlawful* killing).

Second, in applying this maximum liberality standard, we also are persuaded by the Government's response to Appellant's argument that "U.S. Army Soldiers regularly use loaded firearms to attempt to kill [enemy combatants] with premeditation," and that is not a crime. Brief for Appellant at 22, *United States v. Turner*, No. 19-0158 (C.A.A.F. Aug. 22, 2019). As the Government states in its brief:

> It is of no moment that a deployed Soldier may lawfully use force to kill an enemy combatant. Such a scenario is antithetical to Appellant's premeditated attempt to kill his infant son's mother

over a child support dispute. Simply put, there is no doubt that the specification notified Appellant that he was charged with an unlawful attempt to kill. The specification alleges that Appellant attempted to kill with premeditation while in Clarksville, Tennessee. SPC CSG's Clarksville apartment is thousands of miles away from the battlefields to which Appellant alludes. Furthermore, the specification alleges that Appellant attempted to kill *SPC* CSG, a title that expressly indicates that the alleged victim is a fellow soldier and thus was an unlawful target . . . .

Brief for the Government at 16, *United States v. Turner*, No. 19-0158 (C.A.A.F. Sept. 23, 2019) (footnote omitted) (citations omitted). Therefore, we conclude that the unlawfulness element of the offense was sufficiently alleged by necessary implication.[8]

Even if this conclusion is susceptible to debate, it is unquestionably true that there simply is no prejudice to be found in this case—even when the stringent constitutional standard of harmlessness beyond a reasonable doubt is applied. *Humphries*, 71 M.J. at 213 n.5. A recitation of the following additional facts underscores this point:

- In the defense motion to release Appellant from pretrial confinement, *defense counsel* attached documents that list "attempted murder" as one of the charges against Appellant.

- The Article 32, UCMJ, 10 U.S.C. § 832 (2012), memorandum of findings lists "attempted premeditated murder" as the violation of Article 80, UCMJ, under the specification of Charge I. Further, that memorandum lists Appellant's counsel as the same counsel that represented him at trial, and the record indicates that the memorandum was emailed as an attachment to those lawyers.

---

[8] Notably, this is consistent with the rationale in *Norwood* when the appellant for the first time on appeal challenged an attempted adultery specification which did not include the terminal element for an Article 134, UCMJ, offense. 71 M.J. at 204.

- In Appellant's pretrial request for a ballistics expert and crime scene reconstruction, *defense counsel* stated, " 'The Accused is presently charged with *attempted premeditated murder* in violation of Article 80, UCMJ.' " *Turner*, 2018 CCA LEXIS 593, *26, 2018 WL 6287965, at *9.

- Elsewhere on the charge sheet, the Specification of Charge III charged Appellant with conspiring with his wife to "*murder*" SPC CSG on the same date and at the same location as the Specification of Charge I, and the Specification of Charge III also detailed the same overt act as alleged in the Specification of Charge I. *Id.* at *26–27, 2018 WL 6287965, at *9.

- The first voir dire question submitted to the court-martial *by defense counsel* began, " 'One of the offenses alleged in this case is attempted premeditated *murder.*' " *Id.* at *27, 2018 WL 6287965, at *9.

- During closing argument, *defense counsel* told the members "The [G]overnment has attempted to convince you that this was a case of attempted premeditated *murder* and it is not that." (Emphasis added.)

- The military judge provided findings instructions to the members which explained that "the accused is charged with the offense of Attempted Premeditated *Murder.*" (Emphasis added.) Additionally, the military judge instructed the members, "The killing of a human being is *unlawful* when done without legal justification or excuse," and, "Proof that a person was actually killed is not required. However, it must be proved beyond a reasonable doubt that the accused specifically intended to kill [the victim] without justification or excuse." (Emphasis added.) Appellant's trial defense counsel reviewed these instructions and did not object to them.

In light of these facts, there is no basis to conclude that if the Government had properly included the word "unlawfully" in Charge I and its Specification that Appellant would have handled his defense at court-martial any differently; that the result of the court-martial would have been any different; or that Appellant would have been provided any additional protection from double jeopardy.

Accordingly, the decision by the United States Army Court of Criminal Appeals is affirmed.

Judge MAGGS, dissenting.

Appellant challenges the Specification of Charge I on the ground that the specification fails to state an offense. This specification alleges a violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880 (2012):

> In that, Specialist Malcolm R. Turner, U.S. Army, did, at or near Clarksville, Tennessee, on or about 1 January 2015, attempt to kill with premeditation Specialist [C.S.G.] by means of shooting her with a loaded firearm, causing grievous bodily injury.

The Court holds that because Appellant did not object to the sufficiency of this specification until after the members had found him guilty, it must construe the specification using the "maximum liberality" standard described in *United States v. Watkins*, 21 M.J. 208, 210 (C.M.A. 1986). This judicially created standard requires us to construe specifications in favor of validity when they are challenged for the first time on appeal. *See id.* at 209. Applying this standard, the Court holds that the quoted specification states the offense of attempted murder. I disagree with this conclusion because I do not believe that we should apply the "maximum liberality" standard in this case. I therefore respectfully dissent.

## I.

I agree with the Court on three basic points. The first point of agreement is that Appellant's objection to the specification at issue was timely. The applicable version of Rule for Courts-Martial (R.C.M.) 907(b)(1)(B) lists failure to state an offense as a "[n]onwaivable ground" for dismissal.[1] This rule provides: "A charge or specification shall be dismissed at any stage of the proceedings if . . . (B) [t]he specification fails to state an offense." And while R.C.M. 905(e) establishes dead-

---

[1] This rule is found in the *Manual for Courts-Martial, United States* (2012 ed.). It applies because Appellant was tried in March 2016. The President subsequently amended R.C.M. 907 in Exec. Order No. 13,730, 81 Fed. Reg. 33,331 (May 20, 2016). The revised R.C.M. 907(b)(2)(E), which is not applicable to this case, provides that a "specification shall be dismissed upon a motion made by the accused before the final adjournment of the court-martial in that case if . . . (E) [t]he specification fails to state an offense."

lines during the proceedings for raising certain kinds of objections and specifies that failing to meet these deadlines constitutes a waiver, these deadlines do not apply to an objection based on "failure of a charge to allege an offense." Accordingly, in this case, Appellant violated no rule by waiting until after the members announced their findings before he moved to dismiss the specification.

The second point is that the Court implies, while not stating outright, that without the "maximum liberality" standard, the specification would fail to state an offense expressly or by necessary implication. Assuming that the Court intended this implication, I agree explicitly. Under R.C.M. 307(c)(3), a "specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication." Article 80(b), UCMJ, provides: "Any person subject to this chapter who attempts to commit any offense punishable by this chapter shall be punished as a court-martial may direct, unless otherwise specifically prescribed." Pursuant to this language, one element of an Article 80, UCMJ, offense is that the accused attempted to commit an "offense punishable by this chapter." Accordingly, under R.C.M. 307(c)(3), a specification of an offense under Article 80, UCMJ, is sufficient only if it "expressly or by necessary implication" identifies an offense that the accused attempted to commit.

The specification at issue in this case could have alleged "expressly or by necessary implication" that Appellant attempted to commit murder in violation of Article 118, UCMJ, 10 U.S.C. § 918, by referencing Article 118, UCMJ, by using the term "murder," or perhaps even by stating generically that the act attempted was an offense under the UCMJ.[2] But the specification did none of those things. Alternatively, the

---

[2] In *United States v. Bryant*, 30 M.J. 72, 74 (C.M.A. 1990), we held that a specification sufficiently alleged a conspiracy to distribute controlled substances because it provided "express notice that the object of the conspiracy was the violation of a federal statute, a provision of the [UCMJ]." In this case, by contrast, the specification did not incorporate the offense of murder by name or reference to Article 118, UCMJ, and did not even minimally allege that the attempted act was a violation of a criminal statute.

specification could have met the test by alleging that Appellant attempted to commit each of the elements of Article 118, UCMJ, but it did not do that either. Article 118, UCMJ, defines murder as follows: "Any person subject to this chapter who, without justification or excuse, unlawfully kills a human being, when he—(1) has a premeditated design to kill . . . is guilty of murder . . . ." Although the specification alleged that Appellant attempted "to kill with premeditation Specialist [C.S.G.]," the specification did not allege the element that the attempted killing was "unlawful."**[3]**

In this regard, the present case is indistinguishable from decisions such as *United States v. Brice*, 17 C.M.A. 336, 38 C.M.R. 134 (1967). In *Brice*, a specification alleged that the appellant "did . . . attempt to sell to [WCW] marihuana (hashish) at Landstuhl, Germany, on or about 19 August 1966." *Id.* at 339, 38 C.M.R. at 137 (internal quotation marks omitted). This Court held that the specification failed to state an offense because it did not allege the sale was "wrongful." *Id.* at 340–41, 38 C.M.R. at 138–39 (internal quotation marks omitted) (citation omitted). The specification therefore lacked "an allegation of criminality." *Id.* at 341, 38 C.M.R. at 139. The same conclusion is true here because the specification at issue fails to indicate that the killing attempted was "unlawful." Thus, I agree with the Court's implication that apart from the "maximum liberality" standard, the specification fails to allege criminality either expressly or by necessary implication.

---

**[3]** Including this element in the charge is necessary because some killings are lawful. R.C.M. 916(c), for example, provides: "A death, injury, or other act caused or done in the proper performance of a legal duty is justified and not unlawful." The discussion to this rule provides two examples: "For example, the use of force by a law enforcement officer when reasonably necessary in the proper execution of a lawful apprehension is justified because the duty to apprehend is imposed by lawful authority. Also, killing an enemy combatant in battle is justified." R.C.M. 916(c) Discussion. The charge sheet need not include the word "unlawfully" or say that the killing was without justification or excuse if it uses alternative words that "convey the same meaning." *Davis v. People*, 151 U.S. 262, 266 (1894) (indictment did not use the word "unlawfully" but conveyed the same meaning by specifying that the defendant acted "feloniously" and "did kill and murder, contrary to the statute").

The third point of agreement is that we could construe the specification to state an offense, even though it omits the word "unlawfully," if we were to use the "maximum liberality" standard announced in *Watkins*, 21 M.J. at 210.[4] This conclusion follows from cases such as *United States v. Brecheen*, 27 M.J. 67 (C.M.A. 1988), which followed *Watkins* and distinguished *Brice*. In *Brecheen*, the Court upheld a specification of attempting to sell LSD even though the specification did not allege the element of wrongfulness. *Id.* at 68–69. The Court held that the ordinary test for assessing the sufficiency of a specification that the Court had used in *Brice* did not apply. The Court emphasized that *Watkins* should control because the "appellant did not challenge these specifications at trial, pleaded guilty, had a pretrial agreement, satisfactorily completed the providence inquiry (including admitting his distributions were wrongful) and suffered no demonstrable prejudice." *Id.* at 68.

## II.

My point of disagreement with the Court concerns the applicability of the "maximum liberality" standard to this case. I do not think that we should use this standard for three reasons. First, nothing in the Rules for Courts-Martial suggests that a different standard of assessing the sufficiency of a specification should apply depending on whether an accused objects to a specification before or after findings. R.C.M. 307(c)(3) provides only one test for determining whether a specification states an offense—whether it alleges every element of the charged offense expressly or by necessary implication—without suggesting that the test varies depending on when an objection is made. And R.C.M. 907(b)(1)(B) provides that a specification that fails to state an offense shall be dismissed "at any stage of the proceedings." Accordingly, under the text of these rules, if a specification fails to state an offense before findings, it also must be construed as failing to state an offense at any time during the proceedings, even after findings.

---

[4] I also agree with the Court that, if we were to apply the "maximum liberality" standard, Appellant could not show prejudice.

Second, no precedent requires us to apply the "maximum liberality" standard in this case. In the previous cases in which this Court applied the standard, the appellant did not challenge a specification before adjournment but instead challenged it for the first time on appeal. *See Watkins*, 21 M.J. at 209; *United States v. Ballan*, 71 M.J. 28, 33 (C.A.A.F. 2012). To be sure, we have employed various expressions in discussing when the "maximum liberality" standard applies. In *Watkins*, for example, we used four different phrases. In one passage, we said that the "maximum liberality" standard applies when a specification is "challenged for the first time on appeal." *Watkins*, 21 M.J. at 209. In a second passage, we quoted a federal case that said the standard applies when an objection is "first raised after trial." *Id.* at 209–10 (internal quotation marks omitted) (quoting *United States v. Thompson*, 356 F.2d 216, 226 (2d Cir. 1965), *cert. denied*, 384 U.S. 964 (1966)). In a third passage, we called the "maximum liberality" standard the "post-conviction liberal construction rule." *Id.* at 209. In a fourth passage, we said that the standard applies when a specification is not "attacked before findings and sentence." *Id.* Although the last of these phrases suggests that the "maximum liberality" standard could apply in this case, that phrase in *Watkins* is simply dicta because the only issue in *Watkins* was what standard to apply when the accused first challenged a specification on appeal. *Id.* at 210.

Third, this Court should not expand the situations in which the "maximum liberality" standard applies. In *Watkins*, this Court adopted the "maximum liberality" standard because it was "the rule of most federal courts . . . [in] construing specifications in favor of validity when they are challenged for the first time on appeal." *Id.* at 209. The Court did not explain its reasons for looking to other federal courts for guidance. Perhaps it took this approach because the Rules for Courts-Martial did not specifically address challenges to specifications that are first raised on appeal. But in this case, where Appellant challenged the specification at trial, the Rules for Courts-Martial provide everything needed for our decision. As discussed above, R.C.M. 907(b)(1)(B) and R.C.M. 905(e) permit the accused to challenge a specification for failing to state an offense at any stage of the proceedings, and

R.C.M. 307(c)(3) establishes the test for assessing such challenges. We therefore have no need to borrow different standards from other federal courts.

### III.

Two additional points deserve mention. First, I understand that various policy arguments might support applying a less strict standard when the accused first raises an objection to a specification after findings. One such policy argument is that the accused should be given an incentive to challenge specifications before findings so that the government has a fair opportunity to take corrective actions that cannot be taken after findings. Policy arguments, however, should be addressed not to this Court but to the President and Congress who may wish to consider future amendments to the Rules for Courts-Martial or to the UCMJ.

Second, attempted murder is undoubtedly a very serious offense. Its seriousness, however, does not change the test for assessing whether the Government has properly charged this offense under R.C.M. 307(c)(3). Perhaps, though, the seriousness of the allegations in this case should have prompted those with responsibility for drafting the charge and specification to take the care necessary to avoid errors. This is a matter to which lawyers must attend and in which judges have no authority for interfering when the accused makes a timely challenge at trial.

### IV.

In conclusion, the specification at issue failed to state an offense under the test in R.C.M. 307(c)(3). Although the specification presumably would have been sufficient if tested under the "maximum liberality" standard, we have not applied, and should not apply, that judicially created standard when an accused challenges a specification in a manner that is timely under R.C.M. 907(b)(1)(B) and R.C.M. 905(e). Accordingly, I would set aside the Specification of Charge I and the sentence in this case.